IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02156-PAB-KMT

MATTHEW PRIM, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING, INC.,

    Defendant.

# ORDER

The matter before the Court is the parties' Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal of Lawsuit with Prejudice [Docket No. 33]. Plaintiff and defendant request that the Court approve their settlement of plaintiff's claims brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

## I. BACKGROUND

On September 30, 2015, plaintiff filed his complaint, individually and on behalf of all others similarly situated, alleging that defendants violated the FLSA. Docket No. 1. Plaintiff was employed by defendant and worked in an oilfield as an hourly employee. *Id.* at 2, ¶ 7. Plaintiff and other employees received bonuses as a component of their compensation including "Safety Bonuses and/or Performance Bonuses." *Id.*, ¶ 8. Defendant excluded these bonuses from calculations of plaintiff's and other employees'

regular rate of pay, and therefore failed to pay plaintiff and the putative class members overtime at the rate required by the FLSA.  *Id.* at 2-3, ¶ 9.[1]

On February 15, 2017, plaintiff filed the instant motion seeking approval of the settlement between the parties and dismissal of this lawsuit with prejudice.  Docket No. 33.

## II.  ANALYSIS

In a suit by employees against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Requiring court approval of FLSA settlements effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee."  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

### A.  Final Class Certification

The FLSA provides that an employee or employees may bring an action "[on] behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Courts determine whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification in two stages.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  A court's initial certification comes at the notice stage, where courts use a fairly lenient standard to determine whether plaintiffs are

---

[1]On April 1, 2016, Justin John-Stanley Bowser opted into this lawsuit.  Docket No. 19.  On May 19, 2016, James Dean Pena opted into this lawsuit.  Docket No. 20.

similarly situated for purposes of sending notice to putative class members. *Id.* at 1102. In this case, plaintiff did not request initial certification. *See* Docket No. 24. After discovery, a court makes a final class certification using a stricter standard. *See Thiessen*, 267 F.3d at 1102-03. In order to approve a settlement prior to a final collective action ruling, "the Court must make some final class certification finding." *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013) (*citing Peterson v. Mortgage Sources, Corp.*, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011)).

In deciding whether to certify a collective action, courts consider several factors, including: (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.[2] *See Thiessen*, 267 F.3d at 1103.

Plaintiff's motion makes no reference to collective action certification, fails to provide any facts demonstrating the similarities of the proposed class, and does not discuss any of the factors the Court should consider in certifying a class. *See Thiessen*, 267 F.3d at 1103 (enumerating the relevant factors for certification of an opt-in class). Instead, plaintiff states that the parties dispute whether the class members are similarly situated. Docket No. 33 at 8. Accordingly, on April 14, 2017, the Court ordered plaintiff to file supplemental briefing with the Court addressing the propriety of some final class certification. Docket No. 37.

---

[2] *Thiessen* lists a fourth factor, i.e. whether plaintiffs made the filings required by the ADEA before instituting suit. *See Thiessen*, 267 F.3d at 1103. That factor does not apply in FLSA cases. *See Kaiser v. At The Beach, Inc.,* 2010 WL 5114729, at *3, n.6 (N.D. Okla. Dec. 9, 2010).

On May 1, 2017, plaintiff filed supplemental briefing in support of the parties' motion for settlement approval. Docket No. 38. In the supplement, plaintiff argues that the Court should apply a more lenient "notice stage" standard in determining whether certification is appropriate. *Id.* at 5. Plaintiff claims that some certification is appropriate because "Ensign employed non-exempt hourly workers who it paid certain non-discretionary bonuses to, including safety and performance bonuses." *Id.*

As an initial matter, the Court disagrees that the notice stage standard should be applied to make some final class certification determination. If this were the case, there would be no need for the Court to consider class certification prior to approving a settlement if an initial notice had been approved. *See Whittington*, 2013 WL 6022972, at *3 (applying the *Thiessen* factors and discussing evidence discovered after the initial class certification was approved). Regardless, under either the notice stage standard or some heightened standard, plaintiff has not provided information sufficient to make any determination as to class certification.

Plaintiff cites three items as evidence of defendant's policy of failing to incorporate certain non-discretionary bonuses to its employees. Docket No. 38 at 5-6. First, plaintiff points to the opt-in forms submitted by plaintiff and two other employees. Docket Nos. 1-1, 19, 20. The opt-in forms reference "unpaid overtime" but do not define the bonuses at issue or discuss plaintiff's specific claims. *See id.* Second, plaintiff cites the scheduling order which provides:

> Other current and former employees who Plaintiff claims are similarly situated to him may join or opt-in and will have the same claims as Plaintiff should the Court grant Plaintiff's request for conditional certification and permission to notify a Putative Class.

Docket No. 17 at 4.  This section provides no description of the breadth of defendant's alleged policy and does not enable the Court to determine whether there is a class of employees who are sufficiently similarly situated for settlement purposes.  Third, plaintiff submits time sheets from plaintiff, which show that Mr. Prim received performance bonuses.  Docket No. 38-1.  It is unclear whether this is the only type of bonus at issue in the settlement, *see* Docket No. 17 at 3 (discussing different types of bonuses paid by defendant), and these time sheets do not provide any evidence that other employees, including the other opt-in plaintiffs, received the bonuses at issue.  Plaintiff has not provided "substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  *Grady v. Alpine Auto Recovery LLC*, No. 15-cv-00377-PAB-MEH, 2015 WL 3902774, at *2 (D. Colo. June 24, 2015) (citing *Thiessen*, 267 F.3d at 1105).

Plaintiff states that approval is appropriate because, "[i]n their settlement, the Parties agreed to limit the scope of the putative class to hourly employees who, based on Ensign's payroll records, received the bonuses at issue."  Docket No. 38.  The settlement agreement, however, has no such limitation.  Instead, the agreement defines the relevant class as "all current Opt-in Class Members and Settlement Class Members who timely opt-in to the Settlement Class."  Docket No. 34 at 4.  "Settlement class" and "settlement class member" are defined, in turn, as "all individuals who are covered by this settlement."  *Id.* at 5.  Neither the terms of the settlement agreement nor the motions submitted by the parties cogently limits the proposed settlement class.

Based on the foregoing, the Court finds that no form of class certification is appropriate.  While plaintiff's motion should be denied on these grounds alone, the

Court addresses several other defects in plaintiff's motion and proposed settlement in anticipation of a renewed motion for approval of settlement.

## B.  The Settlement

To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney's fees.  *Lynn's Food Stores*, 679 F.2d at 1354.

### *1.  Bona Fide Dispute*

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists.  *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010).  To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 718 (E.D. La. 2008).  The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement.  *Id*. at 719-20.

Plaintiff states that the parties dispute whether class members received non-discretionary bonuses that defendant excluded from its overtime calculations.  Docket No. 33 at 8.  Defendant, in contrast, argues that "most, if not all, of the contested

bonuses were discretionary in nature and therefore excludable from the Class Members' regular rates." *Id.*

The determination of the "regular rate" for overtime calculation purposes excludes discretionary bonuses. 29 C.F.R. § 778.211. In order for a bonus to qualify as discretionary, "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." *Id.* The parties do not present any description of the bonuses at issue in the case, how they were paid, or what facts underlie the dispute between the parties.

In a similarly brief manner, plaintiff states that "[t]he Parties further disagreed on whether Plaintiff could satisfy his burden to demonstrate that Ensign acted willfully, which in turn affects whether Plaintiff could recover compensation for two (2) years or three (3) years." Docket No. 33 at 8. There is no description in the motion of the facts in support of or in opposition to a finding that defendant's conduct was willful.

In the absence of facts showing a bona fide dispute, the Court would be unable to approve the parties' proposed settlement.

### 2. Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See, e.g., Dail v.*

7

*George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins*, 568 F. Supp. 2d at 721 (evaluating collective action). The Tenth Circuit considers the following factors when deciding whether to approve a class-action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The parties submit that they fairly and honestly negotiated the settlement. Docket No. 33 at 1. However, the impact of the settlement on the class is too opaque for the Court to find that the settlement is fair and reasonable. In order to determine whether the value of immediate recovery outweighs a possible future recovery, the Court must have some information about the class members' potential recovery. *See, e.g., Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015) ("Nowhere in the parties' submission is there an actual, bottom-line statement of the dollar amount that each of the named plaintiffs would receive from the proposed settlement. This omission, coupled with the parties' failure to specify on a plaintiff-by-plaintiff basis the alleged numbers of hours worked and applicable wages, leaves the Court in a position in which it cannot discharge its duty to determine whether the settlement amount is fair and reasonable as to each of the named plaintiffs."). While the parties need not submit information as to each class member, the Court cannot approve the settlement without information regarding the number of potential

8

class members, the average expected recovery, and the extent to which the settlement represents a compromise of the amounts owed to plaintiffs. *See Whittington*, 2013 WL 6022972, at *5 (approving settlement based on an expected payment of approximately $5,000 to each class member and comparing the settlement to other factually similar cases).[3]

In addition, if the Court finds that the settlement is fair and reasonable, the Court must next determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power. To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Dees*, 706 F. Supp. 2d at 1244. Of particular relevance here is the requirement in the claim form that class members must "agree to keep this matter and the settlement confidential and not disclose it to third parties." Docket No. 34 at 20. A confidentiality agreement is contrary to the FLSA's legislative purpose and "thwart[s] the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right." *Dees,* 706 F. Supp. 2d at 1242. The parties offer no reason why a confidentiality agreement would be appropriate here.

---

[3]The Court also notes that the class notice is deficient. The proposed settlement is a fixed amount and each class member's claims will be reduced pro rata, depending on the number of claims filed. *See* Docket No. 34 at 9, ¶ 17. The proposed class notice, however, makes no mention of this reduced distribution. *See id.* at 16-17.

### *3. Attorney's Fees*

When addressing a common fund settlement, such as the one at issue in this case, it is appropriate to calculate an appropriate attorney's fee based on a percentage of the fund, instead of using the lodestar method. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). To determine a reasonable fee the Court must consider the following factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974)).

Plaintiff's attorneys request an award of thirty-five percent of the settlement amount, or approximately $285,250.00. Docket No. 34 at 4. The motion to confirm the settlement award discusses a "customary contingency fee," but does not address any other *Johnson* factors. Docket No. 33 at 11-12. The fact that a fee is customary, standing alone, does not justify a large award of fees. Since this case was filed in 2015, there have been no dispositive motions filed in the case and, based on the materials before the Court, it is unclear whether the parties engaged in extensive discovery. Moreover, as noted above, the Court is also unable to determine whether

the result obtained in this case would militate in favor of a large fee award. The Court is disinclined to award a "customary" attorney's fee without additional information regarding the attorneys' conduct in this case.

For the foregoing reasons, it is

**ORDERED** that plaintiff's Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal of Lawsuit with Prejudice [Docket No. 33] is **DENIED** without prejudice.

DATED August 24, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge