**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civ. A. No. 15-cv-02156-PAB-KMT

MATTHEW PRIM, Individually and On Behalf of All Others Similarly Situated

      Plaintiff,

v.

ENSIGN UNITED STATES DRILLING, INC.,

      Defendant.

---

**PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY CONDITIONAL CERTIFICATION OF PROPOSED SETTLEMENT
CLASS AND PRELIMINARY APPROVAL OF THE PARTIES' PROPOSED
SETTLEMENT AND NOTICE TO PUTATIVE CLASS MEMBERS**

---

1.    **EXECUTIVE SUMMARY OF RELIEF SOUGHT.**

    Plaintiff Matthew Prim ("Prim" or "Plaintiff") and Defendant Ensign United States Drilling Inc. ("Ensign" or "Defendant") (collectively, the "Parties") reached a settlement of the pending dispute concerning unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

    Prim's Counsel carefully reviewed the Court's August 3, 2018 Order (ECF No. 43) and submits this Motion and the relief requested herein comports with the Court's directives. Thus, for the reasons set forth in detail below, pursuant to Section 216(b) of the FLSA, and with Ensign's agreement, Prim respectfully seeks an Order from the Court: (1) preliminarily conditionally certifying the Parties' proposed settlement class consisting of all current and former hourly employees of Ensign who received an Operator Safety Bonus and/or Mud Bonus ("Contested

Bonuses")[1] at any time from January 18, 2014 to January 18, 2017 ("Putative Class Members"); (2) preliminarily approving the Parties' proposed settlement, attached herein as <u>Exhibit A</u> (the "Agreement"); and (3) approving the Parties' proposed Notice of Settlement & Claim Form and Release to the Putative Class Members, attached herein as <u>Exhibit B</u>.

2.     **FACTUAL & PROCEDURAL BACKGROUND.**

    a.     **The Lawsuit.**

        i.     **Prim's Claims.**

Ensign provides, among other services, oil drilling services to its customers.[2] To perform these services, Ensign employed the Putative Class Members to whom it paid the Contested Bonuses in addition to their hourly pay.[3] Prim alleges that Ensign improperly excluded the Contested Bonuses from the calculation of the Putative Class Members' applicable overtime rate. Ex. C at ¶¶ 9-11; Ex. D at ¶¶ 9-11; Ex. E at ¶¶ 3-5. *see e.g.,* Exs. F and G.

Prim contends Ensign told him and the Putative Class Members they would receive the Contested Bonuses when they were hired. Ex. C at ¶ 4; Ex. D at ¶ 4. Prim contends the Operator Safety Bonuses paid by Ensign to the Putative Class Members were a predetermined amount paid at the completion of a well or project where no injuries or accidents occurred. Ex. C at ¶ 5; Ex. D at ¶ 5; *see also* Ensign Bonus Summaries, attached herein as <u>Exhibit H</u>. Prim contends the Mud Bonuses paid by Ensign to the Putative Class Members were a predetermined amount based on the number

---

[1] Initially, Prim alleged Ensign failed to include Operator Safety Bonuses, Mud Bonuses, Performance Bonuses, Continuity Bonuses, and/or Training and Longevity Bonuses from the overtime calculations. Through investigation and discovery, the Parties narrowed the scope of the bonuses at issue to the Contested Bonuses.

[2] *See* https://www.ensignenergy.com/services#drilling.

[3] *See* ECF No. 1; Declaration of Matthew Prim, attached herein as <u>Exhibit C</u> at ¶¶ 2-10; Declaration of Opt-in Plaintiff James Pena, attached herein as <u>Exhibit D</u> at ¶¶ 2-10; Declaration of Larry Lorenz, attached herein as <u>Exhibit E</u>, at ¶¶ 3-5; *see e.g.,* Plaintiff Matthew Prim Exemplar Pay Stubs, attached herein as <u>Exhibit F</u>; Opt-In Plaintiff James Pena Exemplar Pay Stubs, attached herein as <u>Exhibit G</u>. For example, during their employment with Ensign, Prim and Opt-in Plaintiff James Pena worked for Ensign as non-exempt hourly employees and received the Contested Bonuses. Ex. C at ¶¶ 2-10; Ex. D at ¶¶ 2-10; *see, e.g.,* Exs. F and G.

of days they worked. Ex. C at ¶ 6; Ex. D at ¶ 6; Ex. H. Prim contends Ensign paid the Contested Bonuses to the Putative Class Members to induce them to work more steadily, rapidly, and efficiently and to encourage continued employment with Ensign. Ex. C at ¶ 7; Ex. D at ¶ 7.

On September 30, 2015, Prim filed this lawsuit alleging Ensign willfully failed to pay him and the Putative Class Members overtime compensation at the correctly calculated regular rate of pay for each overtime week because Ensign excluded the Contested Bonuses from the calculation of the applicable overtime rate. *See* ECF No. 1. Prim contends the Contested Bonuses paid by Ensign to the Putative Class Members were non-discretionary and thus should have been included in the regular rate for calculating overtime.[4] *Id.*

The FLSA requires non-exempt employees who work more than 40 hours in a week be paid 1.5 times their "regular rate" of pay. 29 U.S.C. § 207(a)(1). "The keystone of Section 7(a) [of the FLSA] is the regular rate of compensation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). The FLSA broadly defines "regular rate" as the hourly rate paid to the employee, inclusive of "all remuneration for employment." 29 U.S.C. § 207(e); *see also Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42 (1944). The "regular rate" for purposes of overtime is an hourly rate. *Youngerman–Reynolds Hardwood Co.,* 325 U.S. at 424. When employees are paid on a non-hourly basis, the regular rate is determined by dividing the total remuneration by the hours worked. 29 C.F.R. § 778.109. The regular rate is then multiplied by one-and-one-half to determine the overtime rate. 29 U.S.C. § 207(a)(1). The general rule is that the "regular rate" includes "all remuneration" received. 29 U.S.C. § 207(e).

The FLSA provides limited and narrow exceptions allowing an employer to exclude from the regular rate certain forms of compensation when calculating overtime pay, none of which are

---

[4] This case involves a purely statutory analysis: Ensign either properly included non-discretionary bonuses in the Putative Class Members' regular rate calculations or it did not.

applicable here. *Id.* Specifically, Section 207(e) enumerates eight exemptions from the general rule, none of which are applicable herein. *Id.*

> Among these excludable payments are discretionary bonuses, gifts and payments in the nature of gifts on special occasions, contributions by the employer to certain welfare plans and payments made by the employer pursuant to certain profit-sharing, thrift and savings plans.

29 C.F.R § 778.208; *see, e.g.*, 29 C.F.R § 778.211 – 214. For a bonus to qualify for exclusion as a discretionary bonus:

> The employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement.

29 C.F.R. § 778.211(b).

For a bonus to be discretionary, "the employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." *Id.* Bonuses promised at the time of hiring, bonuses paid to induce employees to work more steadily, rapidly, or efficiently, and bonuses paid to employees to remain with the company must be included in the regular rate of pay for overtime purposes. *Id.* at § 778.211(c). Likewise, attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, and bonuses contingent upon the employee's continued employment until the time the payment must also be included in the regular rate of pay. *Id.* Indeed, all other forms of remuneration not listed under Section 207(e) must be included in the regular rate. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.200(c).

Based on the foregoing, Prim contends the Contested Bonuses were non-discretionary and should have been included in the Putative Class Members' regular rate for calculating overtime and seeks unpaid back wages, liquidated damages, pre- and post-judgment interest, and attorney's fees, expenses and costs. *See* ECF No.1.

### ii. Ensign's Defenses.

Ensign filed its Answer on December 14, 2015. ECF No. 11. Ensign admits the Putative Class Members received the Contested Bonuses and that Ensign did not include the Contested Bonuses in the Putative Class Members' regular rate for purposes of calculating overtime. *See* Ex. E at ¶¶ 3-4. However, Ensign argued the Contested Bonuses were discretionary in nature and therefore excludable from the Putative Class Members' regular rates and the Putative Class Members had been paid in full because other bonuses were properly accounted for. ECF No. 11 at ¶¶ 28-29. Ensign claimed the Contested Bonuses were discretionary because it or a third-party retained discretion as to the fact of payment, the timing of payment, and the amount of payment of such bonuses without prior promise or agreement. 29 C.F.R. § 778.211(b); Ex. E at ¶ 4.

Ensign further argued it acted in good faith with respect to its payment practices. ECF No. 11 at ¶¶ 31-32. Ensign also denied any purported violation of the FLSA was willful or that any class of similarly situated employees existed. *Id.* at ¶¶ 26, 30.

### b. The Proposed Settlement.

Even though the Parties disputed liability, they initiated good faith settlement discussions beginning in March 2016. As part of this process, the Parties independently and thoroughly investigated the claims and defenses at issue through informal and formal discovery (as described below), which allowed the Parties to intelligently, and in good faith, weigh both the risks and benefits of continued litigation. After months of negotiation, the Parties reached a comprehensive resolution of this dispute on January 18, 2017. Thereafter, the Parties spent approximately a month negotiating the specific terms of their agreement, the terms of which the Parties memorialized in the settlement agreement they previously submitted to the Court for approval. *See* ECF Nos. 32; 40-1.

### c. The Prior Attempts at Settlement Approval.

On February 15, 2017, Plaintiff filed his Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal of Lawsuit with Prejudice. ECF No. 33. On April 14, 2017,

the Court ordered Prim to file supplemental briefing providing facts demonstrating the similarities of the proposed settlement class and discussing the factors the Court should consider in certifying the proposed settlement class (ECF No. 37), which Prim did on May 1, 2017 (ECF No. 38).

Thereafter, on August 24, 2017, the Court identified several issues it believed Prim needed to address before approving the Parties' agreed upon settlement and denied Prim's Motion without prejudice. ECF No. 39. Prim attempted to address the specific issues raised by the Court in his First Amended Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal with Prejudice, which he filed on January 26, 2018. ECF No. 42.

On August 3, 2018, the Court again denied Prim's request to approve the Parties' agreed-upon settlement. ECF No. 43. In doing so, the Court indicated it needed additional information relating to Prim's participation in the lawsuit to allow the Court to assess the reasonableness of Prim's proposed enhancement award, the time Prim's Counsel spent litigating the case and their reasonable hourly rates, and Prim's Counsel's out-of-pocket costs and further directed Prim to include additional information about the case and the settlement in the Parties' proposed settlement notice forms. *Id.* The Court advised the Parties if they "wish to proceed with the settlement, Prim should correct these issues and file a motion seeking: (1) conditional certification of the proposed settlement class, (2) preliminary approval of the proposed settlement, and (3) approval of notice to the putative class members." *Id.* at p. 6. Pursuant to the Court's Order, Prim files this unopposed Motion with the additional information and changes required by the Court.

3. **MOTION FOR PRELIMINARY CONDITIONAL CERTIFICATION OF THE PARTIES' PROPOSED SETTLEMENT CLASS.**

Preliminary conditional certification of the Parties' proposed settlement class is appropriate because Prim more than meets his burden demonstrating he, along with the Putative Class Members, together were the victims of a common policy or plan alleged to violate the law. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934

(2002) (holding the standard for conditional certification is extremely lenient and requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"); *Lysyj v. Milner Distribution Alliance, Inc.*, No. 13-cv-01930-RM-MJW, 2014 WL 273214, at *2 (D. Colo. Jan. 24, 2014).

As set forth herein, Prim alleges Ensign's pay policies resulted in a distinct violation of the overtime provisions of the FLSA. Prim alleges Ensign failed to pay him and the Putative Class Members at the correctly calculated regular rate of pay for each overtime week worked because Ensign excluded the non-discretionary Contested Bonuses from the calculation of the applicable overtime rate. Prim provides testimonial evidence coupled with pay records confirming Ensign uniformly applied its policy to exclude the Contested Bonuses from the Putative Class Members' overtime calculations regardless of any individualized factor such as experience, age, job duties, geographic location, or tenure. Because Prim provides substantial allegations that Ensign's bonus compensation scheme relating to the Contested Bonuses applies to all Putative Class Members, Prim has met the standard for preliminary conditional certification of the proposed settlement class. *Id.*

    a.    **The Putative Class Members are "Similarly Situated" Because Ensign Paid Them According to a Uniform Plan Alleged to Violate the FLSA.**

All Putative Class Members worked for Ensign as hourly employees. *See* Ex. C at ¶ 2; Ex. D at ¶ 2. The Putative Class Members regularly worked more than 40 hours in a single workweek during the operative period. Ex. C at ¶ 3; Ex. D at ¶ 3. Ensign classified all Putative Class Members as non-exempt employees and paid them on an hourly basis. *Id.* In addition to hourly compensation, Ensign paid all Putative Class Members the Contested Bonuses (which Prim contends are non-discretionary because Ensign guaranteed and provided these bonuses, in part, to induce the Putative Class Members to work safely and efficiently and to encourage them to remain Ensign employees). [5]

---

[5] This is not a case of first impression. Courts in the Tenth Circuit, including those in this District, have addressed conditional certification and the merits of cases involving regular rate violations. *See, e.g., Chavez v. City of Albuquerque*, 630 F.3d 1300, 1308 (10th Cir. 2011) (holding that sick leave buy-back payments must be

Ex. C at ¶¶ 4-11; Ex. D at ¶¶ 4-11; *see e.g.*, Exs. F – H. Ensign paid the Putative Class Members the Contested Bonuses regardless of any individualized factors such as job position, duties performed, or experience. Ex. C at ¶ 8; Ex. D at ¶ 8.

Ensign excluded the Contested Bonuses from the calculation of the Putative Class Members' overtime rate. Ex. C at ¶¶ 9-11; Ex. D at ¶¶ 9-11; Ex. E at ¶¶ 3-5; *see e.g.*, Exs. F and G. It did so regardless of any individualized factors such as experience, age, job duties, or tenure. *Id.* Although Ensign disagrees the Contested Bonuses were non-discretionary (and thus excludable), Ensign asserted affirmative defenses applicable to all Putative Class Members. *See e.g.*, ECF No. 11 at pp. 7-8. For example, Ensign stated it "properly accounts for non-discretionary bonuses in calculating the regular rates of pay," that it "did not willfully deprive Prim or any employee of any wages," and that no Putative Class Member is entitled to any recovery because Ensign acted in good faith. *Id.* at p. 8.

In short, Ensign's pay practice at issue in this case is widespread and systematically applied to all Putative Class Members. *See* Ex. C at ¶¶ 9-11; Ex. D at ¶¶ 9-11. Because it is undisputed Ensign applied this generally applicable pay practice to all Putative Class Members covered by the Parties' proposed settlement, this case is appropriate for immediate preliminary conditional certification of the Parties' proposed settlement class. Ensign does not oppose preliminary conditional certification of the proposed settlement class.

### b. Preliminary Conditional Certification and Notice are Appropriate Because Prim Has Shown the Proposed Settlement Class is "Similarly Situated."

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly

---

included in the regular rate); *McComb v. Sterling Ice & Cold Storage Co.*, 165 F.2d 265, 268-69 (10th Cir. 1947) (holding that the regular rate must reflect all payments which the parties agree shall be received regularly during the workweek); *Beall v.* SST *Energy Corp.*, No. 15-CV-01741-MSK-NYW, 2016 WL 286295, at *2-3 (D. Colo. Jan. 25, 2016) (granting conditional certification of a class of hourly oilfield workers paid non-discretionary bonuses).

situated." 29 U.S.C. §216(b). District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs they may choose to "opt-in" to the suit or the settlement. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). Court-authorized notice prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170-172.

For an opt-in class to be created under the FLSA, an employee need only show he is suing his employer for himself and on behalf of other employees similarly situated. *Gordineer v. Rocky Mountain Offender Mgmt. Sys.*, No. 12-cv-1212-JLK, 2013 WL 179327, at *2 (D. Colo. Jan. 17, 2013). The Tenth Circuit approved the use of a two-step process for determining whether FLSA class members are similarly situated to the named plaintiff. In *Thiessen*, 267 F.3d at 1105, the Tenth Circuit held that the district court's use of a two-step case-by-case or "ad hoc" process for determining whether to certify a class under the ADEA was not error. The court noted the class action provisions of the ADEA borrowed the opt-in class mechanism of the FLSA. *Id.* at 1102. The two-step approach has since been applied to numerous FLSA actions in this Circuit. *See, e.g., May v. E & J Well Service, Inc.*, No. 14–cv–00121–RBJ, 2014 WL 2922655, at *1-2 (D. Colo. Jun. 27, 2014); *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005).

The first step is known as the "notice stage," where the court determines whether there are others similarly situated. The plaintiff is required to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Thiessen*, 267 F.3d at 1102. This is a lenient standard, "which typically results in conditional certification of a representative class." *Baldozier*, 375 F. Supp. 2d at 1092; *Gordineer*, 2013 WL 179327 at *2; *May v. E&J Well Servs., Inc.*, Civ. A. No. 14-cv-00121-RBJ, 2014 WL 2922655, at *2 (D. Colo. June 27, 2014). "A court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Lysyj*, 2014 WL 273214 at *2 (quoting *Smith v. Pizza Hut, Inc.*, No. 09–CV–01632–CMA–BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012)).

In the second stage, which comes at the conclusion of discovery and often in the context of the defendant's motion to decertify the class, the court applies a stricter standard, including application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102–03. The court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit." *Id.* at 1103.

To be "similarly situated," each proposed settlement class member's situation need not be identical, but merely similar. *Gordineer*, 2013 WL 179327 at *2. Proof of a single decision, policy or plan may be provided through the allegations of the complaint, declarations of potential plaintiffs, or documentary corporate evidence. *See Lysyj*, 2014 WL 273214 at *3 (looking solely to the allegations of the complaint and the affidavit of one plaintiff to find that plaintiffs have satisfied the "minimal burden necessary to the conditional certification of a collective action under § 216(b)"); *Beall*, 2016 WL 286295 at *1.

At the notice stage, "plaintiffs are not required to show that their job duties were identical," and "arguments comparing job duties are premature." *Swartz v. D-J Engineering, Inc.*, No. 12–CV–1029–JAR, 2013 WL 534585, at *6 (D. Kan. Sept. 24, 2013). The fact a defendant may assert the same defense against all putative plaintiffs, *i.e.*, that it properly excluded non-discretionary bonuses in the overtime calculations, supports conditional certification. *See Id.* at *6 n. 37. Moreover, potential opt-in plaintiffs need not hold the same job title for purposes of issuing the first stage notice. For example, in *Lysyj*, the court granted conditional certification and ordered that notice be sent to sales representatives who worked in three different divisions and held separate job titles. *Lysyj*, 2014 WL 273214 at *3. In so holding, the court rejected the defendant's arguments the plaintiff was attempting to combine three separate jobs into one for conditional certification purposes and held instead the fact they worked in different departments "is irrelevant to the central

inquiry at this stage – whether the putative plaintiffs were the victim of a single decision, policy or plan as it pertains to pay." *Id.*

Indeed, under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *D'Anna v. M/ACOM, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995). Thus, Prim's claims need not be identical to the potential settlement opt-ins, they need only be similar.[6] In fact, Prim need only demonstrate "a reasonable basis" for the allegation a class of similarly situated persons may exist. *Grayson*, 79 F.3d at 1097; *see also Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (plaintiffs are similarly situated when they together were alleged victims of a "common policy or scheme or plan that violated the law). Moreover, it is not necessary that other similarly situated employees opt-in to the lawsuit for conditional certification to be granted, although at this time at least two similarly situated employees have joined. *See, e.g. Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 639 (D. Colo. 2002) (holding there is no minimum threshold requirement relating to the number of opt-ins to grant conditional certification and at the notice stage the number of persons who wish to join is not a determinative factor); *see also* ECF Nos. 19-20; Ex. C at ¶12; Ex. D at ¶12.

Courts do not review the underlying merits of the action in deciding whether to conditionally certify a class. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (holding the district court, in making a class certification decision, must avoid focusing on the merits of the underlying

---

[6] *See, e.g., Grayson*, 79 F.3d at 1096; *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994); *Betancourt v. Maxim Healthcare Servs., Inc.*, 10 C 4763, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011) (certifying a nationwide class of staffing recruiters); *Camp v. Progressive Corp.*, CIV.A. 01-2680, 2002 WL 31496661 (E.D. La. Nov. 8, 2002) (permitting nationwide notice to various categories of insurance adjusters); *Craig v. Rite Aid Corp.*, 08-CV-2317, 2009 WL4723286 (M.D. Pa. Dec. 9, 2009) (permitting nationwide notice to current and former assistant store managers); *Allen v. McWane, Inc.*, CIV.A.2:06-CV-158TJ, 2006 WL 3246531 (E.D. Tex. Nov. 7, 2006) (permitting notice to hourly employees at thirteen different pipe and foundry plants across the country); *Hanks, et al v. Big Lots Stores, Inc.,* CA 5:04-cv-00238-DF (E.D. Tex. August 8, 2005) (permitting nationwide notice to furniture department managers).

case). Therefore, whether the Contested Bonuses Ensign paid the Putative Class Members are discretionary versus non-discretionary is irrelevant for purposes of conditionally certifying the settlement class.

The granting of conditional certification requires nothing more than a modest factual showing demonstrating that the Putative Class Members together were victims of a common policy or plan that allegedly violated the law. *See Mooney*, 54 F.3d at 1214, n. 9 (emphasis added). This showing can be made by detailed allegations in a complaint supported by affidavit. *Id.* at 1213-16; *Grayson*, 79 F.3d at 1096. Under either the notice stage standard or some other heightened standard, Prim more than meets his burden to show conditional certification of the Parties' proposed settlement class is appropriate.

The record contains substantial allegations the Putative Class Members are similarly situated in that they are victims of a single decision, policy, or plan wherein Ensign failed to compensate them using an overtime rate derived from a formula based on all remuneration received. *See, e.g.*, ECF No.1; Exs. C – H. Prim specifically alleges the Putative Class Members are similarly situated because they all: (1) worked for Ensign as non-exempt oil field employees during the operative time period; (2) had the same hourly pay structure; (3) received the Contested Bonuses; and (4) were required or permitted to work overtime without receiving overtime calculated at the correct regular rate pursuant to the FLSA in weeks in which they received the Contested Bonuses because Ensign failed to include such bonuses in their regular rate. *Id.* Thus, preliminary conditional certification of the Parties' proposed settlement class is appropriate herein.

4.  **MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AND PROPOSED SETTLEMENT NOTICE PROCEDURE AND FORMS.**

The Parties have reached a comprehensive resolution of this dispute which, if approved by this Court, will resolve this matter in its entirety at the final approval stage. The Parties now seek preliminary Court approval of their Agreement. *See* Ex. A. The Agreement represents a fair

compromise of a *bona fide* dispute concerning the legality of Ensign's compensation practices with respect to the overtime treatment of the Contested Bonuses to the Putative Class. The Agreement covers the claims of the Putative Class Members who worked during the relevant period and provides them with a meaningful opportunity to recover compensation they are allegedly due. If approved, the Putative Class Members will receive notice of the settlement explaining the Agreement, the amount of compensation they are due, and the steps to take to receive their pro rata share of the settlement. *See* Ex. B.

The Agreement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information over the course of multiple months. The terms of the Agreement are reasonable, appropriate, and fair to all parties and individuals involved. To effectuate the Agreement, Prim asks the Court to preliminarily conditionally certify the Parties' proposed settlement class (as described above) and preliminarily approve the Parties' Agreement so notice of the Agreement may be issued to the Putative Class Members.

      a.      **General Terms of the Agreement.**

The key details of the proposed settlement are described below and are set forth in the attached Agreement. *See* Ex. A. Additionally, the Parties attach the proposed Notice and Claim Form and Release that will be used to notify the Putative Class Members of their right to participate in this settlement and their rights under the FLSA. *See* Ex. B.

      i.      **Settlement Amount and Formula for Distribution.**

The proposed settlement obligates Ensign to pay up to a maximum settlement amount of $815,000.00 ("Gross Settlement Amount"). If approved, all claims, including claims for attorneys' fees ($282,250.00, which is 35% of the Gross Settlement Amount), costs (not to exceed $3,500.00), settlement administration costs (not to exceed $15,000.00), and an enhancement payment for Representative Plaintiff Prim ($7,500.00) will be deducted from the Gross Settlement Amount (resulting in a "Net Settlement Amount" of $503,750.00). Because the settlement follows the opt-in

structure of the FLSA, only Putative Class Members who timely return executed settlement Claim Form and Releases (Ex. B) will be eligible to receive a settlement payment. 29 U.S.C. § 216(b) (only workers who consent in writing are part of an FLSA collective action).

If approved, the balance of the Net Settlement Amount will be apportioned among the Putative Class Members who elect to participate in the settlement. Each Putative Class Member who elects to receive a settlement will receive their actual pro-rata share of the money they are allegedly owed based on corrected regular rate calculations incorporating the Contested Bonuses. The pro rata shares of those workers who elect to participate in the settlement will not be reduced based on the number of claims filed. The portion of the Net Settlement Amount attributed to workers who elect not to participate will be returned to Ensign following the close of the settlement opt-in period.

To calculate each Putative Class Member's apportioned share of the Net Settlement Amount, the Parties used records of each Putative Class Member's actual compensation, bonuses received, and days worked during the relevant period to determine the overtime allegedly owed. *See* Declaration of Michael Josephson, attached herein as <u>Exhibit I</u>, at ¶ 10. This means a Putative Class Member who timely files a properly executed Settlement Consent Form and claims his portion of the Net Settlement Amount will be eligible to receive a settlement payment from the Net Settlement Amount which accurately reflects the compensation owed for those time periods in which overtime was worked and bonuses were paid. Attached herein as <u>Exhibit J</u> are the Putative Class Members' pro rata shares of the money they are allegedly owed incorporating the Contested Bonuses in their regular rate calculations.

The Parties further agree that 50% of the individual settlement amounts shall be subject to all withholding, liens, garnishments, withholding orders and other deductions as required by law, as payment in full compromise and settlement of all claims for alleged unpaid overtime back pay or compensation. The remaining 50% of the individual settlement amount shall represent payment in full compromise and settlement of all claims for liquidated damages. These amounts shall be paid

from the Net Settlement Amount.

ii. **Proposed Settlement Notice Program to Administer the Settlement.**

Should the Court preliminarily approve the Parties' Agreement, Prim further asks the Court to approve the Parties' proposed Notice of Settlement & Claim Form and Release (Ex. A) and direct the Parties to implement and complete the claims process as set forth in their Settlement Agreement (Ex. H).

In accordance with the Agreement, Putative Class Members who fall within the proposed settlement class will receive a copy of the Notice of Settlement and the Settlement Consent Form. *See* Ex. B. These settlement documents explain in detail the settlement of the lawsuit, why they are receiving the Notice, what the lawsuit is about, what their options are, the effect of participating or not participating in the settlement, their rights under the FLSA, the terms of the settlement, the scope of the release, their estimated pro rata settlement amounts and how the amounts were calculated, the steps they must take to participate in the settlement, how and when the settlement will be administered, and what to do if they have further questions. *Id.* at pp. 1-5.

These documents will be mailed to the Putative Class Members by the Settlement Administrator. Ex. A at § 11(f). Individuals who provided Ensign with an email address will also receive the settlement notice materials by email. *Id.* Individuals who elect to participate in the settlement will be required to return their properly executed Settlement Consent form to the Settlement Administrator and/or Prim's Counsel within 60 days from the date of mailing or emailing. *Id.* at § 9(m). Additionally, the Parties agree to provide an identical reminder notice by mail and email (if applicable) to the Putative Class Members at least 30 days before the close of the settlement opt-in period. *Id.* at § 11(f).

Following the close of the settlement opt-in period, Prim will move for final collective action certification and for final approval of the Parties' Agreement. *Id.* at § 13. At this stage, Prim's counsel will inform the Court about the participation of the class in the settlement. Should the Court

issue a final approval order, settlement checks will be prepared and distributed by the Settlement Administrator approximately 45 days from the date of the Court's final approval order. *Id.* at §§ 15, 20. Putative Class Members who elect to participate in the settlement will then have 180 days to present their settlement checks for payment.

      iii.        **Scope of Settlement Class Members' Release.**

If approved, those individuals who timely return a settlement Claim Form and Release in exchange for compensation under the settlement, will provide Ensign with a limited wage and hour release, which will release Ensign from all state and federal wage related claims asserted or that could have been asserted in this Lawsuit (the "Released Claims"). *See* Ex. B. The Released Claims include any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees[7] for alleged unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA or any other state or local wage-related law applicable to the allegations asserted in the Action and which emanate from and are based upon the same facts alleged in the Action on behalf of Prim and the Settlement Class with respect to the time that they were employed by Ensign during the Class Period. *Id.* The specific release language is as follows and is applicable only to Prim and those individuals who timely return properly executed claim forms:

> In consideration for the payment of my settlement share, I am giving up potential or actual claims against various persons and entities. I am also giving up the right to sue for potential or actual claims against various persons and entities. In particular, I waive and release Ensign (including its past and present parents, subsidiaries, affiliates, officers, directors, board members, shareholders, employees and agents)

---

[7] "Releasees" means Defendant Ensign United States Drilling Inc., and its past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers.

from any and all claims relating to the payment/non-payment of wages or overtime under federal, state, or other laws during the time period beginning three (3) years back from the date I sign this Claim Form and Release by opting-into this lawsuit and ending on the date I sign this Claim Form and Release.

### iv. Scope of Representative Plaintiff Prim's Release.

In addition to the Released Claims and in exchange for release and other representations and warranties (including the payment of an enhancement award), Prim further agreed to provide Ensign with a general release of claims. The specific general release language is as follows and is applicable to only Prim:

> Plaintiff Matthew Prim shall be deemed to have released and forever discharged Releasees from any and all Released Claims, and, in addition, shall be deemed to have released Releasees from any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; or any allegation for costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights, civil rights, wage-hour, whistleblower, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Action, any claim for breach of contract, contract or tort laws, or any claim arising under common law, such as claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or *respondeat superior*, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees, based upon any conduct occurring up to and including the date of the Court's Approval Order, however claims for workers' compensation are excluded from the scope of this release.

### b. The Court Should Preliminarily Approve the Parties' Agreement.

Through the life of this collective action, the Parties conducted formal and informal discovery, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in this collective action. Ensign sent Prim Requests for Admissions,

Requests for Production, and Interrogatories in July 2016. Ensign also produced hundreds of pages of documents consisting primarily of personnel records, payroll records, tax records, bonus descriptions, and policies and procedures.

Informally, Ensign provided Prim with multiple electronic spreadsheets consisting of payroll and workweek data for each individual Putative Class Member (nearly 340 workers). The information amounted to nearly one-million lines of data which had to be organized according to individual Putative Class Member with columns relating to locations worked; rates of pay; days and weeks worked; hours worked per day (both regular and overtime hours, if applicable); total compensation received (including for both regular and overtime hours worked, if applicable); and the types, amounts, and timing of the Contested Bonuses received. *See, e.g.*, Exemplar Data for Individual Putative Class Members, attached herein as <u>Exhibit K.</u>  Such data allowed Prim's Counsel to calculate each individual Putative Class Member's unpaid overtime for every pay period which they worked more than 40 hours per week **and** received a Contested Bonus.

Based upon the Parties' investigation, legal evaluation, and considering the contested legal and factual issues involved, including Prim's Counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Putative Class Members pursuant to this Settlement Agreement, the Parties concluded their Agreement is fair, reasonable, adequate, and in the best interests of the Parties and Prim seeks Court approval of the same. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements); *Camp v. The Progressive Corp, et al*, 2004 WL 2149079 (E.D. La. 2004); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a *bona fide* dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

The Agreement represents a fair compromise of a *bona fide* dispute concerning the legality of Ensign's compensation practices with respect to the Putative Class Members. Because the FLSA's

provisions are mandatory, employees' claims for back wages or overtime may not be compromised absent either supervision by the Secretary of Labor, *see* 29 U.S.C. § 216(c), or approval by the court. *See Lynn's Food Stores, Inc.* v. *United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). The Tenth Circuit recognized the res judicata effect of a court-approved settlement of FLSA claims, where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the settlement is fair and reasonable in the judgment of the Parties. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

### i. *Bona Fide* Dispute Existed.

Congress recognized that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank,* 324 U.S. at 706–07.[8] Due to this unequal bargaining power, Courts must ensure that a settlement agreement, following an FLSA claim, must be the product of a *bone fide* dispute.

Here, the Parties contested the claims and defenses asserted. Prim alleged the Putative Class Members received the Contested Bonuses from Ensign and the bonuses were non-discretionary and should have been included in the Putative Class Members' overtime calculations. *See* 29 C.F.R. § 778.211(c); Ex. C at ¶¶ 4-9; Ex. D at ¶¶ 4-9; Ex. H; *see, e.g.*, Exs. F – H. On the other hand, Ensign argued the Contested Bonuses were discretionary and excludable from the Putative Class Members'

---

[8] The Court therein noted either a district court or Department of Labor must approve an FLSA settlement and explained the low standard for judicial review when the parties are represented by counsel. *See also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a *bona fide* dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

overtime rates. *See* 29 C.F.R. § 778.211(b); ECF No. 11 at ¶¶ 28-29; Ex. E at ¶¶ 3-4.

The Parties further disagreed on whether Prim could satisfy his burden to demonstrate that Ensign acted willfully, which in turn affects whether Prim could recover compensation for two (2) years or three (3) years. *See* 29 U.S.C. § 255. "Willful" is defined as whether "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "[T]he court's operative inquiry focuses on the employer's diligence in the face of a statutory obligation." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011); *see also* 29 C.F.R. § 578.3 (2001) ("[A]n employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act, among other situations, if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry.").

Prim contends Ensign either knew the Contested Bonuses were non-discretionary or recklessly disregarded the potential such bonuses were non-discretionary in excluding them from the overtime calculations. For one, there are countless other lawsuits against oilfield companies involving regular rate violations for excluding similar bonuses in employees' overtime calculations.[9] Moreover, Prim contends the fact Ensign changed its pay practices relating to the payment of the Contested Bonuses evidences its knowledge the Contested Bonuses should have been included in the overtime calculations. In contrast, Ensign maintained it "properly accounts for non-discretionary bonuses in calculating the regular rates of pay," the specific terms of the Contested Bonuses made them discretionary, and it "did not willfully deprive Prim or any employee of any wages," and no Putative Class Member is entitled to any recovery because Ensign acted in good faith. ECF No. 11

---

[9] *See, e.g., Price v. 1st Rate Energy Servs.*, Civ. A. No. 1:15-cv-0745-WYD-KLM (D. Colo. April 9, 2015) (alleging failure to include bonuses in oilfield employees' overtime calculations); *Beall v. SST Energy Corp.*, Civ. A. No. 1:15-cv-01741-MSK-NYK (D. Colo. Aug. 12, 2015) (alleging failure to include Bottom Hole Bonuses (a form of a performance bonus) in hourly oilfield employees' overtime calculations); *Lunt v. Cyclone Drilling, Inc.*., Civ. A. No. 1:15-cv-2262 (D. Colo. Oct. 13, 2015) (alleging failure to include Safety, Annual, Bottom Hole, Deadline, and Oil Based Mud Bonuses in hourly oilfield employees' overtime calculations).

at p. 8; Ex. E at ¶¶ 4-6. Prim also contends Ensign would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. *See* 29 U.S.C. § 260. Ensign maintained it always acted in good faith, and damages (if any) should be unliquidated and be recovered only for a two (2) year period.

There is no question the Agreement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. Indeed, the Court may have found all or part of the Contested Bonuses discretionary in nature and that any violation of the FLSA was not willful, which would drastically affect the outcome and damages of this matter.

   **ii. The Settlement is Fair and Reasonable.**

The Parties agree the terms of the Agreement are fair and reasonable. To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA's policy rationales. *Lunt v. Cyclone Drilling, Inc.*, Civ. A. No. 15-cv-02262-CMA-KMT, ECF No. 28 at p. 4 (D. Colo. Aug. 26, 2016) (approving FLSA settlement involving hourly oilfield personnel who alleged non-discretionary bonuses were not properly included in the regular rate); *Solis v. Top Brass, Inc.*, Civ. A. No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014).

In determining whether the settlement is fair and reasonable, the Court should note "there is a 'strong presumption in favor of finding a settlement fair[.]'" *Lunt*, Civ. A. No. 15-cv-02262-CMA-KMT, ECF No. 28 at p. 4; *Felix v. Thai Basil at Thornton, Inc.*, Civ. A. No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015) (finding settlement reached by the parties to be a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions); *Solis*, 2014 WL 4357486 at *3 (noting a "presumption of fairness attaches to the proposed settlement"). When determining whether a settlement is fair and reasonable, courts weigh a number of factors, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity,

expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiff's success on the merits and (6) the amount of the settlement in relation to the potential recovery. *Id.*

### a. The Experience of Counsel and the Absence of Fraud or Collusion.

Experienced Counsel for both Parties believes the Agreement is fair and reasonable. The Parties' Agreement is a result of arm's-length negotiations by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. *See, e.g.*, Ex. I; Declaration of Richard (Rex) Burch, attached herein as Exhibit L; https://shermanhoward.com/attorney/brooke-a-colaizzi/; https://shermanhoward.com/attorney/emily-f-keimig/. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.[10] Further, as reflected by his signature on the Agreement, Prim approves the Agreement because he and the Putative Class Members are receiving a substantial benefit. *See* Ex. A.

After the Parties reached an agreement to settle, the Parties engaged in extensive negotiations concerning the specific terms of the Agreement, the notice program, and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations, and are nothing about the settlement is the result of fraud or collusion.

---

[10] *Lunt*, Civ. A. No. 15-cv-02262-CMA-KMT, ECF No. 28 at p. 4 (finding settlement fair and reasonable and attributing significant weight to attorneys' professional judgment where counsel had significant experience in prosecuting and/or defending FLSA actions for many years, as here); *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F.Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

**b.     The Amount of the Settlement in Relation to the Potential Recovery.**

And there is no question the value of the Agreement represents fair value for the Putative Class Members. Numerous workers will receive back wages and penalty damages under federal law without the risk or expense of protracted litigation and trial. This is particularly significant under the circumstances presented herein considering the wavering oil and gas economy and the Parties' fundamental disagreements as to the merits of Prim's claims and the possibility the Putative Class Members could receive no money at all. Each Putative Class Member who elects to participate in the settlement will be able to recover a specified amount calculated based upon his/her specific employment history with Ensign during the relevant period. Indeed, the amounts recovered under the Agreement are fair on both a collective and individual basis.

If approved, Ensign will pay $815,000.00 under the Agreement to resolve the claims of Prim and the Putative Class Members who timely execute a Claim Form and Release. The Parties estimate there are approximately 340 Putative Class Members. Ex. I at ¶ 10. Based on the extensive payroll and workweek data provided by Ensign, Prim's Counsel determined the Putative Class Members' estimated maximum damages (100 percent of the damages the Putative Class Members potentially could recover if Prim prevailed on all claims alleged against Ensign, including claims relating to willfulness) amounts to approximately $685,000 (unliquidated). *Id.* Prim's Counsel further determined under this scenario, each Putative Class Member would be owed, on average, approximately $2,000 (with the lowest amount allegedly owed amounting to approximately $70 and the highest amount amounting to approximately $11,600). *Id.*

Pursuant to the Parties' Agreement, the Net Settlement Amount from which the Putative Class Members' pro rata shares were calculated equals approximately $504,000 (nearly 75% of the estimated maximum damages). *Id.* On average, each Putative Class Member's pro rata share amounts to approximately $1,500 (with the lowest amount being approximately $50 and the highest amount being approximately $8,500). *Id.* The money recovered herein is thus, arguably, 75% of Ensign's

total exposure for unliquidated back wages for the entire three-year statutory period utilized – a strong result warranting this Court's approval.[11]

### c. The Stage of Proceedings, Extent of Discovery Completed, and Risks of Continued Litigation.

At this stage, extensive formal and informal discovery has taken place, including the exchange of written discovery, data, documents, and certain personnel information. This exchange of information allowed the Parties to determine Prim and the Putative Class Members' purported losses because of Ensign's alleged wage and hour violations. Additional discovery in this regard would not likely change the outcome of the Parties' Agreement as it relates to damages.

Prior to reaching a settlement, Class Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Class Counsel certainly believes Prim's claims relating to regular rate violations are strong and can be proven at trial, a finding of liability is never assured, especially in complex, hyper-technical litigation. Even with a strong factual and legal case, the Putative Class Members face significant risks in establishing liability and damages. Prim alleged hyper-technical regular rate violations of the FLSA. Although Class Counsel felt strongly the Contested Bonuses were non-discretionary and should have been included in the overtime calculations, the Court easily could have determined all or part of the Contested Bonuses were discretionary. *See* 29 C.F.R § 778.208; 29 C.F.R. § 778.211(b). In addition, even assuming Prim proved Ensign's exclusion of the Contested Bonuses violated the FLSA, Prim

---

[11] *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (holding the settlement should be a reflection of the total value of the claims discounted by the risks and costs of litigation); *see, e.g.*, *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (where court found a settlement providing 9.1% of the total value of the action was "within the range of reasonableness."); *Rieve v. Coventry Healthcare, Inc.*,11-cv-1032 (ECF Nos. 243-1, 245) (C.D. Cal. 2014) (approving FLSA settlement where "the settlement of $3,000,000, before deductions, represents more than 29% of Plaintiffs' estimated maximum damages, assuming these amounts could be proven at trial."); *see also*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982) (noting it is not the Court's role to second guess the terms of the Parties' negotiated settlement agreement).

may not have been able to prove Ensign's violation was willful, thus negating an entire year's worth of potential damages. Further risks existed as they relate to conditional certification of a class, summary judgment on the merits, and any appeal. Indeed, substantial risks and uncertainties were present from the outset of the case that made it far from certain any relief would be obtained.

And should the Court not approve the Parties' Agreement, additional expensive and time-consuming formal discovery will occur, and additional litigation will be necessary on issues relating to conditional certification and the proper classification of the Contested Bonuses (including the filing of motions for conditional certification and dispositive motions relating to the Parties' claims and defenses). Both Parties maintain their factual and legal positions are viable and they intend to vigorously litigate their positions in the absence of a settlement. The Parties' Agreement, therefore, avoids potentially costly litigation spanning months (or perhaps years) and the Putative Class Members clearly benefit from the surety of recovery under the Settlement.

### iii.    The Proposed Enhancement Award is Reasonable.

Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable" in similar cases).

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in

pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131. Courts in this Circuit have also considered whether the named plaintiff in an FLSA collective action agreed to grant a defendant employer a broader general release in addition to releasing their FLSA claims in assessing the reasonableness of an incentive award. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs "substantially higher" than normal service awards of $20,000 each where they agreed to a general release).

Importantly, Courts in this District (including this Court) have found similar incentive awards reasonable in other FLSA/employment cases. *See, e.g.*, *id.*; *Aragon v. Clear Water Products, LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (Brimmer, J.) (approving $7,000 incentive award to named plaintiff in FLSA class and collective action); *Shaulis v. Falcon Subsidiary, LLC*, No. 18-cv-00293-CMA-NYW, 2018 WL 4620388, at *1 (D. Colo. Sept. 26, 2018) (approving incentive awards of $7,500 to both named plaintiffs in FLSA class and collective action); *Pilego*, 313 F.R.D. at 131; *Shaw*, 2015 WL 1867861 at *8-9l (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010) (approving $10,000 service award to named plaintiff).

The proposed $7,500.00 enhancement award to Prim is reasonable and Ensign does not oppose paying the same. Ex. E at ¶ 10. The enhancement award represents only 0.0092% of the Gross Settlement Amount (and 0.0149% of the proposed Net Settlement Amount) and is intended to recognize Prim's initiative and efforts on behalf of the Putative Class Members and the time and effort he contributed to this Lawsuit and the settlement over the last three-plus years, as well as to compensate him for agreeing to a general release of claims (as opposed to the limited wage and hour release those Putative Class Members electing to participate in the settlement will be subject to).

Prim took a substantial risk in bringing forth claims relating to Ensign's wage and hour

violations and representing the Putative Class Members when no other employees were willing to do so. In doing so, Prim faced potential retaliation and blackballing from prospective employers who, by performing a quick Google search of his name, may quickly see Prim sued his former employer for back wages. Moreover, Prim expended significant effort and time in educating his Counsel regarding the Putative Class Members' job experiences and Ensign's policies and procedures, as well as in assisting in the litigation by reviewing and evaluating the arguments put forth by Ensign and the hundreds of pages of documents produced, reviewing and answering formal written discovery served by Ensign, and participating in settlement discussions and the settlement approval process (including providing a declaration) to help ensure the Putative Class Members recover the unpaid wages Prim claims they are owed. Prim also participated in dozens of telephone conferences with Class Counsel and their staff over the course of the litigation. In total, Prim devoted approximately 30 hours in furtherance of his class representative duties. Ex. I at ¶ 20.

Because Prim took significant personal risks in representing the interests of the Putative Class Members, worked diligently to ensure the Putative Class Members could recover the wages they are allegedly due, and agreed to provide Ensign with a general release of claims in addition to releasing his FLSA claims, the proposed $7,500.00 incentive award agreed to by the Parties is reasonable to compensate Prim.

> iv.    **The Requested Attorney's Fees and Costs are Reasonable.**

Prim and Class Counsel believe the Agreement's provision concerning attorney's fees and costs is fair and reasonable, as Prim's Counsel is only seeking attorney fees amounting to 35% of the Gross Settlement Amount and reimbursement for expenses/costs. If approved, Ensign does not oppose Class Counsel's request for an attorney fee award of 35% of the Gross Settlement Amount and reimbursement of costs as provide for in the Agreement. Ex. E at ¶ 9.

The FLSA provides "[t]he court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. 29

U.S.C. § 216(b). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *Ali v. Jerusalem Restaurant, Inc.*, Civ. A. No. 14-cv-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *See Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 484 (10th Cir.1998); *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Lucken Family Ltd. Partnership*, 2010 WL 5387559 at *2. In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry,* 43 F.3d 474, 482–83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dilworth v. Case Farms Processing, Inc.,* No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in class actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are historically applied in performing a lodestar analysis, and consist of: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee

is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.*

Considering the circumstances presented herein, Class Counsel's requested attorney fees and litigation expenses are imminently reasonable as both a percentage of the total common settlement fund and under the *Johnson* factors.

### a. Class Counsel Represented Prim on a Contingency Fee Basis and Voluntarily Reduced Their Fees (Factors 6 and 11).

Class Counsel represented Prim on a contingency fee basis. Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724 at *6; *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *4 (D. Colo. Apr. 22, 2015). Here, Prim agreed to a 40% contingency fee with his Counsel in September 2015. Class Counsel in this case voluntarily reduced the agreed-upon attorneys' fees to 35%. Ex. C at ¶ 16; Ex. I at ¶ 19. Ensign does not oppose an award of attorney's fees of 35% of the Gross Settlement Amount. Ex. E at ¶ 9. The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of an FLSA case] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA "attorneys' fees included in a settlement agreement requires … deference by the district court to the parties' agreement." *Id.*

**b. Class Counsel's Requested Fee is Within the Customary Range of Reasonableness for FLSA Contingency Fee Cases in this District (Factors 5-6, and 12).**

Class Counsel's request for attorney fees in the amount of 35% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit (including in this District). As some courts have noted, the "customary contingency fee" awarded to class counsel in a common fund FLSA collective action settlement such as this is approximately 30-40 percent. *See, e.g.,* *Lunt*, Civ. A. No. 15-cv-02262-CMA-KMT, ECF No. 28 at pp. 5-6 (finding that attorneys' fees and expenses of 35% of the gross settlement amount "well within the normal range for a contingent fee award"); *Whittington*, 2013 WL 6022972 at *6 (approving award of attorney's fees of 39% of total settlement and noting "this [request] is within the normal range for a contingent fee award" in FLSA collective actions); *Lucken Family Ltd. Partnership*, 2010 WL 5387559 at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (*citing, inter alia, Vaszlavik v. Storage Technology Corp.,* No. 95–B–2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable")); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *see also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (finding the "customary contingency fee" within the range of 35% to 40%).

The requested attorneys' fee award of 35% sought by Class Counsel is also similar to fee awards deemed reasonable in other FLSA collective action cases in this District involving hourly oilfield employees and allegations of regular rate violations. *See e.g., Lunt,* Civ. A. No. 1:15-cv-2262 at ECF No. 28, at p. 6 (approving award of attorney fees in the amount of 35% of the gross settlement amount in FLSA collective action alleging bonuses were not properly included in hourly oilfield

employees' regular rate calculations where the Parties agreed to comprehensive settlement without first conditionally certifying the class of effected employees); *Price*, Civ. A. No. 1:15-cv-0745-WYD-KLM, at ECF No. 80, pp. 1-2 (approving award of attorney fees in the amount of 37.5% of the gross settlement amount in FLSA collective action alleging bonuses were not properly included in hourly oilfield employees' regular rate calculations); *see also*, *Pineda v. Scandrill, Inc.*, No. 4:16-cv-00953, ECF No. 19 (S.D. Tex. Mar. 27, 2017) (approving award of attorney fees in the amount of 33% of the gross settlement amount in FLSA collective action alleging oilfield company failed to include certain bonuses in the regular rate for overtime calculations).

> **c. FLSA Collective Actions are Inherently Complicated and Prim's Counsel is Experienced and Skilled in Handling the Same (Factors 1-4, 7, 9-10).**

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Two fundamental questions governed this case: (1) whether the Contested Bonuses were non-discretionary and thus includable in the Putative Class Members' overtime calculations; and (2) whether this question could be resolved on a collective action basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

There is no dispute Prim's Counsel is represented by highly skilled and experienced counsel with significant experience in handling FLSA collective actions like this case. *See* Ex. I; Ex. L. FLSA class and collective action cases are the primary focus of Class Counsel's docket. *Id.* Although Class Counsel are based in Texas, both JOSEPHSON DUNLAP, LLP, and BRUCKNER BURCH PLLC have a national docket of FLSA cases, with litigation across the United States, including in Colorado. *Id.* Class Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and

maximizes the settlement value of the case. Class Counsel's experience in this field has resulted in a familiarity with the evidence and testimony necessary to successfully prosecute cases like this.

Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate, especially in a case such as this that began as a single plaintiff with a complaint against a large oilfield organization which blossomed into nearly 350 eligible Putative Class Members. *Whittington*, 2013 WL 6022972 at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming."). In addition to the number of Putative Class Members, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972 at *6.

As courts in this District have noted, attorneys handling such large classes are precluded by the ticking of the clock from taking other cases given that counsel took a chance on a possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* As set forth below, Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making the relatively undesirable. *See Aragon*, 2018 WL 6620724 at *6. Indeed, the possibility existed in this case no recovery would be made for the time and efforts exerted by Class Counsel.

Prim alleged hyper-technical regular rate violations of the FLSA. The Court easily could have determined all or part of the Contested Bonuses were discretionary and thus no regular rate violation occurred. *See* 29 C.F.R § 778.208; 29 C.F.R. § 778.211(b). Even assuming Prim proved Ensign's exclusion of the Contested Bonuses violated the FLSA, Prim may not have been able to prove Ensign's violation was willful (negating a year of damages). These facts made taking this case on a contingent fee arrangement extremely risky. The amount of recovery depended on the amount and frequency of the Contested Bonuses received and the hours worked in the weeks the Contested Bonuses were paid, requiring a significant volume of the opt-in collective to prove worthwhile.

Further, calculating damages in this matter took considerable skill and effort given the sheer number of Putative Class Members and volume of payroll and personnel information provided which needed to be distilled, processed, and evaluated line-by-line.

> ### d. The Time and Labor Required was Substantial and Class Counsel's Requested Costs are Reasonable (Factor 1).[12]

This case has been on file for over three years. If and when final approval is obtained, Class Counsel and their staff will have spent nearly 265 hours investigating, litigating and bringing this case to a successful settlement and resolution. Ex. I at ¶¶ 11-14; 17 (noting Michael Josephson spent 80 hours, Rex Burch spent 12.5 hours, Lindsay Itkin spent 147 hours, and staff members spent 25 hours litigating and bringing this case to resolution). Applying a rate of $650.00 per hour for attorneys Michael Josephson and Richard (Rex) Burch, $400 per hour for attorney Lindsay Itkin, and between $125 and $140 per hour for experienced legal assistants, which are consistent with rates in Colorado, yields an attorney's fee lodestar of $121,860.00. *See Aragon*, 2018 WL 6620724 at *7 (finding a $600 hourly rate in an FLSA case consistent with rates in this District); *Shaw*, 2015 WL 1867861 at *8 (approving hourly rates ranging from $150 to $675 per hour in collective action); *see also* Ex. I at ¶¶ 11-17.

In addition, to-date Class Counsel has expended $2,783.38 in unreimbursed costs. Ex. I at ¶ 18. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Class Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage, FedEx, and other delivery fees, travel expenses (including airfare, lodging,

---

[12] Ensign does not oppose Class Counsel's request for a reasonable attorney fee award and reasonable cost reimbursement from the Gross Settlement Amount. Ensign takes no position as to the reasonableness of Class Counsel's expended hours, out-of-pocket costs, or requested attorney fee award at this time, as Ensign has not reviewed or analyzed records bearing on the same.

transportation, and meals), Pacer charges, and legal research. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement, Ensign does not object to the request for costs. *Id.*; *see also* Ex. A. The sum of Class Counsel's base hours plus costs in this case is $124,643.38.

The requested attorney fee award of $285,250.00 (35% of the Gross Settlement Amount), represents a lodestar multiplier of 2.34, which is well within the range of lodestar multipliers approved in class and collective action cases in this District. *See* Ex. I at ¶ 17. Indeed, courts have approved lodestar multipliers ranging from 2.5 to 4.6 for class and collective actions in this District. *See In re Miniscribe Corp.,* 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57); *Mishkin v. Zynex*, No. 09-cv-00780-REB-KLM, 2012 WL 406925, at *2 (D. Colo. Sept. 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6).

The number of hours expended on this case are reasonable given that the litigation has been ongoing since September 2015 and has involved both formal and informal discovery, hours of conferral with opposing counsel on issues relating to both the merits of the case and settlement, months of settlement negotiations, and multiple motions (with more to come in the form of final certification and approval motions).

Prior to filing Prim's Original Complaint, Class Counsel spent substantial time coordinating with and interviewing Prim and potential opt-in plaintiffs, investigating the veracity of Plaintiff's allegations, reviewing Ensign's business and pay practices, researching the law relating to technical regular rate violations of the FLSA in preparing this matter to get to the filing stage, and speaking with Prim about Ensign's payroll and personnel policies. Ex. I at ¶ 11. The Parties further

investigated through discovery and the exchange of documents the scope of the bonuses at issue. *Id.* at ¶ 12.

The Parties fiercely disputed whether the Contested Bonuses were excludable from the Putative Class Members' overtime calculations and exchanged written discovery to flesh out the issue. Prim responded to Requests for Admissions, Requests for Production, and Interrogatories sent by Ensign in July 2016. Prim drafted and served similar written discovery on Ensign, which the Parties agreed to stay Ensign's formal responses to facilitate settlement negotiations. Nevertheless, Ensign produced hundreds of pages of documents consisting of personnel records, payroll records, tax records, bonus descriptions, and policies and procedures. Informally, the Parties exchanged numerous spreadsheets (amounting to nearly a million lines of data) containing payroll and workweek data for approximately 340 Class Members to allow the Parties' to ascertain the potential damages herein. Class Counsel spent significant time sifting through the data and payroll information to formulate a damages calculation, which required Prim's Counsel to distill, process, and evaluate the data line-by-line to incorporate the information into new spreadsheets and calculate each Putative Class Member's estimated unpaid overtime for weeks wherein they worked more than 40 hours. *See, e.g.,* Ex. K. The Parties then spent several months negotiating back and forth in good faith to resolve this matter without to avoid protracted litigation.

And since the Parties' reached a settlement in January 2017, Prim's Counsel has spent significant time and effort in getting the Parties' agreed settlement approved. After conferring at length with Ensign, on February 15, 2017, Prim's Counsel filed Prim's Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal of Lawsuit with Prejudice. ECF No. 33. Thereafter, upon the Court's request, Prim provided supplemental briefing relating to the propriety of some final class certification supporting his Motion. ECF No. 38. The Court ultimately denied Prim's Motion and identified several issues it believed Prim needed to address before approving the Parties' settlement. *See* ECF No. 39.

Subsequently, the Parties modified their Agreement to clearly limit the proposed settlement class to those Putative Class Members who received the Contested Bonuses and to remove confidentiality and Prim filed his lengthy First Amended Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal of Lawsuit with Prejudice on January 26, 2018. ECF No. 42. Therein, Prim endeavored to address the Court's specific concerns by providing evidence of and describing the similarities of the proposed settlement class, the underlying dispute between the Parties (including Ensign's affirmative defense relating to willfulness), the Contested Bonuses and how they were paid, and the Putative Class Members' potential recovery (including the number of potential class members, the average expected recovery, and the extent to which the settlement represents a compromise of the amounts owed to the potential class members). *Id.* Prim also provided additional evidence and support for his Counsel's requested attorney's fees. *Id.*

On August 3, 2018, the Court denied Prim's First Amended Unopposed Motion for Approval. ECF No. 43. Therein, the Court indicated it needed additional information to assess the reasonableness of Prim's requested enhancement award and Class Counsel's attorney fees and costs, directed Prim to include additional information about the case and the settlement in the Parties' proposed settlement notice forms, and advised the Parties if they "wish to proceed with the settlement, Prim should correct these issues and file a motion seeking: (1) conditional certification of the proposed settlement class, (2) preliminary approval of the proposed settlement, and (3) approval of notice to the putative class members." *Id.* Pursuant to the Court's Order, Prim's Counsel again conferred at length with Ensign's Counsel, modified the Parties' Agreement and proposed Notice and Claim Form & Release to include the additional details required by the Court, and drafted, prepared exhibits for, and filed this lengthy Motion for preliminary conditional certification and preliminary approval of the Parties' proposed settlement. In doing so, Prim's Counsel again endeavored to address all of the concerns raised by the Court.

With that said, focusing on the total time and labor Prim's Counsel expended, without considering the outcome obtained, is unnecessary, arbitrary, and potentially counterproductive. *See In re Synthroid Mktg. Litig.,* 325 F.3d 974, 979–980 (7th Cir. 2003) ("The client cares about the outcome alone" and Class Counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."); *In re Comdisco Sec. Litig.,* 150 F.Supp.2d 943, 948 n. 10 (N.D. Ill. 2001) ("To view the matter through the lens of free market principles, [lodestar analysis] (with or without a multiplier) is truly unjustified as a matter of logical analysis."); *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers,* 155 U .PA.L.REV.103 (Nov. 2006). Indeed, "[t]he degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded." *Dalal v. Alliant Techsystems, Inc.,* 927 F.Supp. 1374, 1381 (D.Colo. 1996) *aff'd,* 182 F.3d 757 (10th Cir. 1999); *see also Singer v. City of Waco, Tex.,* 324 F.3d 813, 829 (5th Cir. 2003) (noting "the most critical factor in determining a fee award is the degree of success obtained").

### e. The Results Obtained are Not Unduly Below the Putative Class Members' Total Estimated Recovery (Factor 8).

The degree of success here is high and the $815,000.00 settlement represents a significant recovery on behalf of the proposed settlement class. This is especially true considering collective action certification had not been granted at the time the Agreement was reached. Here, all Putative Class Members will have an opportunity to participate in the settlement. Further, Ensign vigorously contested Prim's claims and denied the Putative Class Members were improperly paid, underpaid, or that any alleged damages are owed.

Importantly, the estimated pro rata settlement shares are not unduly below what they could hope to receive upon a full recovery after trial for willful violations during the relevant period. Ex. I at ¶ 10. On average, each Putative Class Member's best day amounts to approximately $2,000 in unpaid overtime wages (unliquidated). This amount includes all money owed for third-year claims

for which a willful violation must be shown. *Id.* Through the Parties' Agreement, the average Putative Class Member's pro rata share for of the Net Settlement (based on their actual work history, hours worked, and bonuses received) amounts to approximately $1,500. *Id.*

**5.    THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT NOTICE PROCEDURE AND SETTLEMENT FORMS.**

Preliminary approval of the Parties' Agreement will enable any approved settlement notice and claim documents to be sent to the Putative Class Members in a manner best calculated to ensure they are alerted to the terms of the settlement.  Every worker who elects to participate in this case because of the settlement notice will know exactly the nature of this FLSA collective action lawsuit, what they are getting, and what they are giving up, prior to making an informed decision to participate. The Parties' proposed settlement Notice – which will be sent by the Settlement Administrator via first class mail and email (if an email address is available) – provides the Putative Class Members with adequate notice of their rights under the Agreement.  Moreover, the Consent Form and Release is a simple short form that permits Putative Class Members to claim their settlement money quickly and easily.

In addition to using straight-forward settlement notice materials, the Parties also agree to issue notice by mail and email, a 60-day notice period, and a reminder to the Class Members. These procedures will ensure the settlement notice documents are timely delivered and received by the individuals who are eligible to make a claim. For these reasons, the Court should approve the Parties' proposed settlement notice forms and procedures.

**6.    CONCLUSION.**

For the reasons set forth in detail herein, the Court should preliminarily conditionally certify the Parties' proposed settlement class, preliminarily approve the Parties' agreed-upon settlement, and approve the Parties' propose settlement notice and consent forms.

Respectfully Submitted,

By:/s/ Lindsay R. Itkin
    Michael A. Josephson
    Texas State Bar No. 24014780
    Lindsay R. Itkin
    Texas State Bar No. 24068647
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Tel: (713) 352-1100
    Fax: (713) 352-3300

    **AND**
    Richard J. (Rex) Burch
    Texas State Bar No. 24001807
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    Tel: (713) 877-8788
    Fax: (713)877-8065

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I served this document via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

    /s/ Lindsay R. Itkin
    **Lindsay R. Itkin**

## CERTIFICATE OF CONFERENCE

I hereby affirm that Counsel for Plaintiff conferred with Counsel for Defendant regarding the subject matter of this Motion and that Defendant is unopposed to the relief sought herein. Following the Parties' successful settlement negotiations and the Court's denial of Plaintiff's initial and first amended Motions for Approval, Counsel for Plaintiff and Counsel for Defendant exchanged numerous drafts of this Motion and corresponding exhibits. The documents filed herewith represent the Parties' final agreement as to the scope of the settlement and notice to putative class members.

*/s/ Lindsay R. Itkin*
**Lindsay R. Itkin**