IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 15-cv-02156-PAB-KMT

MATTHEW PRIM, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING, INC.,

    Defendant.

---

# ORDER

---

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Conditional Certification of Proposed Settlement Class and Preliminary Approval of the Parties' Proposed Settlement and Notice to Putative Class Members [Docket No. 49]. Plaintiff renews his request that the Court approve the parties' settlement of plaintiff's claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On September 30, 2015, plaintiff filed his complaint, individually and on behalf of all others similarly situated, alleging that defendants violated the FLSA. Docket No. 1. Plaintiff was employed by defendant and worked in an oilfield as an hourly employee. *Id.* at 2, ¶ 7. Plaintiff and other employees received bonuses as a component of their compensation including "Safety Bonuses and/or Performance Bonuses." *Id.*, ¶ 8. Defendant excluded these bonuses from calculations of plaintiff's and other employees' regular rate of pay, and therefore failed to pay plaintiff and the putative class members

overtime at the rate required by the FLSA. *Id.* at 2-3, ¶ 9.

On February 15, 2017, plaintiff filed a motion seeking approval of the settlement between the parties and dismissal of this lawsuit with prejudice. Docket No. 33. The Court denied the motion without prejudice, noting several issues that prevented the Court from being able to approve the parties' settlement. Docket No. 39. Specifically, the Court found that: (1) plaintiff had not provided sufficient information to support final class certification; (2) there were insufficient facts demonstrating a bona fide dispute; (3) "the impact of the settlement on the class [was] too opaque" to allow the Court to determine whether the settlement was fair and reasonable; (4) the parties had offered no explanation as to why it was appropriate to require class members to abide by a confidentiality agreement; and (5) plaintiff's request for attorney's fees failed to address 11 out of 12 of the *Johnson* factors. *Id.*

Plaintiff filed an amended motion and revised proposed settlement agreement on January 26, 2018. Docket Nos. 42, 42-1. The Court again denied plaintiff's motion without prejudice. Docket No. 43. The Court found that it was unable to approve the proposed settlement because plaintiff had not moved for conditional certification of the collective action. *Id.* at 3. Further, the Court determined that it could not evaluate the appropriateness of final certification, the fairness of the agreement, or the reasonableness of the parties' agreed-upon fees award because plaintiff had failed to provide the putative class members with notice and an opportunity to opt in to the lawsuit. *Id.* at 5. In addition, the Court noted three deficiencies in plaintiff's motion that were to be addressed in any future motion: (1) plaintiff's failure to provide sufficient

2

information regarding plaintiff Prim's participation in the lawsuit, in order to allow the Court to assess whether the $7,500 proposed enhancement award was reasonable; (2) counsel's failure to provide information regarding the amount of time spent litigating the case or the reasonable hourly rates of the attorneys involved; and (3) the notice's failure to sufficiently inform putative class members of the nature of the claims, the rights of those who choose not to opt in to the lawsuit, and the terms of the settlement agreement. *Id.* at 7-9.

On February 19, 2019, plaintiff filed this motion seeking (1) preliminary conditional certification of the proposed settlement class; (2) preliminary approval of the proposed settlement; and (3) approval of the parties' proposed notice to putative class members. Docket No. 49 at 1-2. With his motion, plaintiff submitted copies of the settlement agreement and settlement notice. *See* Docket Nos. 49-1, 49-2.

## II. ANALYSIS

### A. Class Certification

The FLSA provides that an employee or employees may bring an action "[on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts determine whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification in two stages. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). A court's initial certification comes at the notice stage, where courts use a fairly lenient standard to determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members. *Id.* at 1102. Plaintiff is required to prove "nothing more than substantial allegations that the putative

3

class members were together the victims of a single decision, policy or plan." *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012). This is a "lenient" standard, *Baldozier v. Am. Fam. Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005), "which typically results in conditional certification of a representative class." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). The second stage, which comes at the conclusion of discovery, applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102-03.[1]

Plaintiff seeks final certification of a class of "hourly oilfield employees who worked for Defendant during the Class Period[2] who received Operator Safety Bonuses and Mud Bonuses" (collectively, the "Contested Bonuses"). Docket No. 42-1 at 4. Plaintiff claims that defendant informed plaintiff and the other class members when they were hired that they would receive "Operator Safety Bonuses" upon certain events, such as the completion of a project where no injuries or accidents occurred, and would receive "Mud Bonuses" based on the number of days that they worked. Docket No. 49 at 2-3. Plaintiff argues that the Contested Bonuses were non-discretionary and alleges

---

[1] *Thiessen* involved a collective action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Because the ADEA adopts the collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA collective actions. *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D. Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

[2] The Class Period for plaintiff Prim is September 30, 2012 until January 18, 2017, and, for all other eligible class members, from January 18, 2014 through January 18, 2017. Docket No. 42-1 at 3.

that defendant wrongfully failed to include the bonuses in its calculation in determining the class members' overtime rates. *Id.* at 3.[3] Defendant's failure to do so, according to plaintiff, violates the FLSA. *Id.* at 7.

Plaintiff alleges that all putative class members are hourly employees of defendant's and all regularly worked more than 40 hours per workweek during the Class Period. Docket No. 1 at 2, ¶ 7. He states that the putative class members received the Contested Bonuses, but that defendant excluded the Bonuses from its calculation of the class members' regular rate of pay and, as a result, the class members were not paid their proper overtime rates. *Id.* at 2-3, ¶¶ 8-9.

The Court finds that plaintiff has provided substantial allegations that the putative class members are similarly situated. He alleges that the putative class members were all subject to defendant's policy of excluding the Contested Bonuses from their overtime rate calculations. This is sufficient for conditional class certification. *See Thiessen*, 267 F.3d at 1102; *see also MacDonald v. Covenant Testing Tech., LLC*, No. 18-cv-02290-NRN, 2019 WL 1755282, at *4 (D. Colo. Apr. 18, 2019) (finding that plaintiff had provided substantial allegations that putative class members were similarly situated

---

[3]The FLSA requires that non-exempt employees who work more than forty hours in a workweek be paid for the hours in excess of forty "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Regular rate" is typically considered an employee's hourly rate, inclusive of "all remuneration for employment." 29 U.S.C. § 207(e); *see also Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944); 29 C.F.R. § 778.109. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Thus, whether the bonuses are included in the calculation for the total remuneration for employment has an impact on the compensation that the class members receive for their overtime work.

5

when plaintiff claimed that defendant wrongly excluded per diem payments in calculation of overtime pay). For this reason, the Court will conditionally certify a collective action consisting of all hourly oilfield employees who worked for defendant from January 18, 2014 until January 18, 2017 and who received Operator Safety Bonuses and Mud Bonuses during that time frame.

### B. The Settlement

In a suit by employees against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Requiring court approval of FLSA settlements effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney's fees. *Lynn's Food Stores*, 679 F.2d at 1354.

#### *1. Bona Fide Dispute*

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010). To meet this obligation,

the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 718 (E.D. La. 2008). The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id*. at 719-20.

The parties' dispute in this case revolves primarily around the discretionary nature of certain bonuses paid to hourly oilfield employees, which defendant did not take into account in calculating the employees' overtime compensation. *See* Docket No. 1 at 2-3, ¶¶ 8-9. In his motion, plaintiff first describes the parties' dispute over the discretionary nature of the Contested Bonuses: plaintiff claims that the Contested Bonuses "were non-discretionary and should have been included in the Putative Class Members' overtime calculations." Docket No. 49 at 19; *see also* 29 C.F.R. § 778.211(c) (stating that "any bonus which is promised to employees upon hiring" or "announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay"). In contrast, defendant argues that the Contested Bonuses were "discretionary and excludable from the Putative Class Members' overtime rates." Docket No. 49 at 19-20; *see also* 29 C.F.R. § 778.211(b). Regarding the willfulness of defendant's conduct, plaintiff asserts that defendant either knew that the Contested Bonuses were non-discretionary or acted

7

in reckless disregard of that fact given the "countless other lawsuits against oilfield companies involving regular rate violations for excluding similar bonuses in employees' overtime calculations" and defendant's decision to alter its practices regarding the payment of the bonuses. Docket No. 49 at 20. Defendant, however, argues that it acted in good faith, "properly accounts for non-discretionary bonuses in calculating the regular rates of pay," and "did not willfully deprive Prim or any employee of any wages." *Id.* Given the respective positions of the parties, the Court finds that a bona fide dispute exists.

### 2. Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See, e.g.*, *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins*, 568 F. Supp. 2d at 721 (evaluating collective action). The Tenth Circuit considers the following factors when deciding whether to approve a class-action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). "There

is a strong presumption in favor of finding a settlement fair." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018).

Under the terms of the settlement agreement, defendant agrees to pay a gross settlement amount of $815,000.00. Docket No. 49 at 13. Of that amount, an estimated $285,250.00 will go toward attorney's fees,[4] $3,500.00 will pay for out-of-pocket costs incurred by class counsel, $15,000.00 will be disbursed to the Settlement Administrator, and $7,500.00 will be paid to plaintiff in the form of a service award. *Id.* The remaining sum – approximately $503,750.00 (the "net settlement amount") – will be divided among the estimated 340 class members on a pro rata basis. *Id.* at 14, 23. Each class member's pro rata share will be calculated based on that individual's total compensation, bonuses received, and total weeks worked during the class period. *Id.* at 14. Fifty percent of each individual settlement award will be treated as back wages and subject to state and federal income tax withholding. *Id.* The remaining fifty percent will be designated as non-wage penalties and liquidated damages. *Id.* Under the parties' agreement, the net settlement amount amounts to 75% of the putative class members' maximum possible recovery – which results in an average pro rata share of approximately $1,500.00.[5] *Id.* at 23.

---

[4]Plaintiff provides two different attorney's fees amounts in his motion: $282,250.00, Docket No. 49 at 13, and $285,250.00. *Id.* at 34. Because the $285,250.00 amount is included in the parties' proposed settlement agreement, Docket No. 49-1 at 7, the Court considers this amount the parties' agreed-upon fee award.

[5]Plaintiff estimates that the putative class members' maximum damages if plaintiff were to recover on all claims would be approximately $685,000. Docket No. 49 at 23. Plaintiff estimates that the average pro rata share in this scenario would be approximately $2,000 per class member. *Id.*

The Court finds the parties' settlement to be fair and reasonable. Plaintiff represents that the parties' settlement is the result of arm's-length negotiations by attorneys experienced in litigating federal and state wage and hour disputes, *id.* at 22, and plaintiff states that he "approves the Agreement because he and the Putative Class Members are receiving a substantial benefit." *Id.* And, given the parties' dispute over the facts and law, the Court finds that the value of this immediate recovery outweighs the mere possibility of future relief after protracted litigation. The net settlement amount reflects an adequate compromise in light of the disputed questions of law and fact in this case and the risks inherent in continued litigation. *See Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *3 (D. Colo. Apr. 22, 2015) (finding settlement amount representing approximately 40% of damages potentially recoverable fair and reasonable "given the significant risks and costs associated with continued litigation"); *see also* Docket No. 49 at 19-21 (discussing disputed questions of law and fact).

The Court also finds the $7,500 incentive award given to plaintiff is reasonable. When evaluating the reasonableness of an incentive award, courts can consider factors such as (1) "the actions the plaintiff has taken to protect the interests of the class"; (2) "the degree to which the class has benefitted from those actions"; (3) "the amount of time and effort the plaintiff expended in pursuing the litigation"; and (4) "reasonable fears of workplace retaliation." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (internal quotation marks and alteration marks omitted). The motion states that plaintiff "took a substantial risk" in bringing this lawsuit

when no other employee was willing to do so, facing "potential retaliation and blackballing from prospective employers." Docket No. 49 at 26-27. Plaintiff also represents that he "expended significant effort and time" in this litigation, participating in all stages of the litigation "to help ensure the Putative Class Members recover the[ir] unpaid wages." *Id.* at 27. And the putative class members stand to benefit from plaintiff's contributions, receiving 75% of the maximum recovery amount. The Court finds that this enhanced award is reasonable. *See Pliego.*, 313 F.R.D. at 131 (finding $7,500 service payment to be "appropriate" and "commensurate with awards in similar cases"); *Whittington*, 2013 WL 6022972, at *6 (finding $7,500 service award to be "modest" in light of the fact that case had been "pending for three years, during which time Ms. Whittington ha[d] remained steadfast in her dedication to pursuing the collective action").

Because the Court finds the settlement fair and reasonable, it must next determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power. To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Dees*, 706 F. Supp. 2d at 1244. The record shows that there are approximately 340 similarly situated employees who were subject to the overtime calculation policy employed by defendant. If such policy is not remedied, these circumstances could recur. Further, defendants have no known history of non-compliance with the FLSA. The Court finds that the settlement

does not undermine the purposes of the FLSA.

### 3. Notice

Plaintiff asks the Court to approve the parties' proposed Notice of Settlement & Claim Form and Release [Docket No. 49-1] and to direct the parties to implement and complete the claims process as set forth in the settlement agreement [Docket No. 49-1]. Although § 216(b) does not require a court to hold a fairness hearing before approving a collective action settlement, courts generally require, at a minimum, that opt-in plaintiffs be given notice of any settlement and an opportunity to object. *Tommey v. Computer Scis. Corp.*, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015). Once the Court concludes that conditional certification on an FLSA collective action is appropriate, the Court may authorize plaintiff to disseminate a proper notice and opt-in consent form to putative class members. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); see also 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he give his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The Court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs. *Hoffman-LaRoche*, 493 U.S. at 171. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (internal citations and quotations omitted).

In its previous Order [Docket No. 43], the Court informed the parties that their proposed notice omitted critical information regarding the nature of the claims, the rights of individuals who choose not to opt in to the lawsuit, and the terms of the settlement agreement. Docket No. 43 at 9. Specifically, the Court noted that the notice did not explain the nature of an FLSA collective action or inform the putative class members of their right to pursue an independent action should they decline to opt in to the lawsuit. *Id.* The proposed notice also failed to state the amount of the gross settlement award, the requested attorney's fees and costs, the settlement administrator's costs, or the service award to be paid to plaintiff. *Id.* The Court directed the parties to address these issues in any future proposed notice. *Id.* at 10.

The Court finds that the parties have corrected the noted issues. The notice informs putative class members of the nature of the FLSA collective action and the basis of plaintiff's claim. Docket No. 49-2 at 3. It informs the putative class members that, should they decline to opt in to the settlement, they do not give up any legal right to pursue an independent action against defendant. *Id.* at 4. It also informs the recipient of the proposed settlement amount, the amount that is to go toward attorney's fees and costs, and the amount of the enhancement award to be paid to plaintiff. *Id.* Moreover, it contains placeholders for informing the putative class members of their pro rata estimated settlement payment. *Id.* at 5. Because the parties have cured the previous proposed notice's deficiencies, the Court approves the parties' proposed notice.

### *4. Attorney's Fees*

To determine a reasonable attorney's fee in common fund cases, courts in the Tenth Circuit "appl[y] a hybrid approach which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *McCaffrey v. Mortg. Sources, Corp.*, 2011 WL 32436, at *5 (D. Kan. Jan. 5, 2011) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). Those factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974)).

The proposed settlement agreement provides that plaintiff's counsel will receive $285,250 in attorney's fees, or approximately 35% of the gross settlement amount. Docket No. 49-1 at 7. Additionally, counsel will recover $3,500 for out-of-pocket costs. *Id.* at 8. The Court previously rejected plaintiff's request for attorney's fees on the ground that plaintiff had only addressed one of the *Johnson* factors, *see* Docket No. 39 at 10, and, in the Court's order denying plaintiff's second motion, the Court noted that plaintiff's allegations that counsel "spent substantial time" on the case was insufficient

to determine whether the requested fee was reasonable, as counsel had provided no information regarding the actual amount of time spent litigating the case or the reasonable hourly rates of the attorneys involved. Docket No. 43 at 8. The Court specifically noted that plaintiff had not provided enough information regarding counsel's conduct in the case to justify the requested fee award. *Id.* Plaintiff's present motion has cured these deficiencies, and the Court finds that the *Johnson* factors weigh in favor of approving the requested fee award.

First, class counsel represents that, at the time of filing their motion, the attorneys and their staff had spent over 240 hours on this case and anticipated spending approximately 20 additional hours conducting the final approval process. Docket No. 49-9 at 5. As part of the litigation, counsel conducted both informal and formal discovery and spent months negotiating with defendant before reaching a settlement, which process also required significant time. *Id.* at 4, ¶ 12. Given the substantial amount of time and labor invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of the requested fee award.

Plaintiff also states that FLSA collective actions are inherently complicated and that class counsel is experienced and skilled in handling these matters. Docket No. 49 at 31. Specifically, attorney Michael Josephson states that he has been either lead counsel or co-counsel in over 1,000 collective or class actions, particularly labor-based class actions. Docket No. 49-9 at 3, ¶ 6. The Court agrees that the novelty of the questions presented and the skill required in litigating this case weighs in favor of approving the proposed fee award. *See Whittington*, 2013 WL 6022972, at *6 ("FLSA cases are not novel, but this is a specialized area of the law where some degree of

extra skill is needed to litigate.").

The requested thirty-five-percent fee is within the customary range of attorney's fees. *See Lucken Fam. Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *see also Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) (collecting cases approving percentage fees ranging from 24% to 36% of the common fund). Further, class counsel represented plaintiff on a contingency fee basis, which weighs in favor of granting requested fees. *Shaw*, 2015 WL 1867861, at *7 ("[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case.") (internal quotation omitted).

The Court finds that the amount involved and the results obtained weigh in favor of approving the proposed fee arrangement. "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). Here, class counsel recovered $815,000 on behalf of 340 settlement class members and secured an award that was 75% of the maximum potential recovery. Given the risks involved, the Court finds that the relief provided by the settlement represents a favorable result for the settlement class. *See Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief

contributes to the "real and actual value" of a settlement).

Finally, courts evaluating the reasonableness of a percentage fee award will often cross check the requested fee with the lodestar amount. *See, e.g., Shaw*, 2015 WL 1867861, at *8; *see also Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method"). Class counsel seek $121,860.00 for 263.5 total hours spent on the case. Docket No. 49-9 at 6, ¶ 17. The requested fee reflects a 2.34 multiplier of the lodestar amount, which is within the range of multipliers approved in other class or collective action cases. *See Miniscribe Corp. v. Harris Trust Co. of California*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming approval of 2.57 lodestar multiplier); *see also Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases from this district ranging from a 2.5 multiplier to a 4.6 multiplier).

Class counsel has set out the amount of hours spent on the case and the reasonable hourly rates involved, submitting a declaration from Michael Josephson setting out the hourly rates of himself, two other attorneys, a data specialist, and two paralegals. *See* Docket No. 49-9 at 5. Michael Josephson's and Richard Burch's claimed hourly billing rate is $650 per hour. *See id.* These two attorneys have been practicing for eighteen and twenty-two years, respectively. Further, Lindsay Itkin, an attorney with eight years of experience, has a billing rate of $400 per hour. Data specialist Omid Afhami's hourly billing rate is $125 per hour, and paralegals Mirna Estopier and Lily Landaverde, each with over ten years of experience, have an hourly

17

billing rate of $140 per hour.

The Court has previously found that an $600 hourly rate charged by class counsel was generally consistent with the rates charged in this district. *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018); *see also Shaw*, 2015 WL 1867861, at *8 (approving hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation). "Even if the rate is slightly higher than the rates customarily charged in this area, the [2.34] multiplier is lower than the lodestar multipliers that have been approved in other class action cases in this District." *Aragon*, 2018 WL 6620724, at *7; *see also Mishkin*, 2012 WL 4069295, at *2. Further, the *Johnson* factors weigh in favor of approving plaintiff's requested fees.

## III. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's Unopposed Motion for Preliminary Conditional Certification of Proposed Settlement Class and Preliminary Approval of the Parties' Proposed Settlement and Notice to Putative Class Members [Docket No. 49] is **GRANTED**. It is further

**ORDERED** that:

1. This action shall be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). The class is defined as follows:

> All hourly oilfield employees who worked for defendant from January 18, 2014 through January 18, 2017 who received Operator Safety Bonuses and Mud Bonuses.

2. The proposed Notice [Docket No. 49-2] is approved.

3. Within twenty-one days, defendant shall provide to plaintiff's counsel a list of all potential class members. The list shall include all available contact information including U.S. Mail addresses and electronic mail addresses.

4. Within fifteen days after receiving this list from defendant, plaintiff shall send the Notice by First Class U.S. Mail and email the Notice to the last known address of each of the individuals identified on the above-referenced list.

5. Any individuals to whom notice is sent shall "opt-in" by returning the necessary documents to plaintiff's counsel within sixty days from the postmark date of the Notice.

DATED September 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge