**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civ. A. No. 15-cv-02156-PAB-KMT

MATTHEW PRIM, Individually and On Behalf of All Others Similarly Situated,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING, INC.,

    Defendant.

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT**

**1.  SUMMARY.**

On September 30, 2019, the Court granted Prim's Unopposed Motion for Preliminary Conditional Certification of Proposed Settlement Class and Preliminary Approval of the Parties' Proposed Settlement and Notice to Putative Class Members (ECF No. 49). *See* ECF No. 51.

In accordance with the Court's preliminary approval Order, Prim and the Settlement Administrator distributed the Court-approved notice to the 336 Putative Class Members. *See* Declaration of Michael Josephson, attached as Exhibit 1, at ¶ 20. The settlement "opt-in" period closed on January 4, 2020. *Id.* at ¶ 21. In total, nearly half of the Putative Class Members (163 individuals or 49%) timely executed and returned the Court-approved Claim Form and Release. *Id.* at ¶ 22. These Settlement Class Members claimed approximately 58% of the Net Settlement Amount ($290,337.72) and their average pro rata share amounts to $1,781.23. *Id.*

Prim seeks final collective action certification of a Settlement Class consisting of "all hourly oilfield employees who worked for Ensign from January 18, 2014 through January 18, 2017

1

who received Operator Safety Bonuses and Mud Bonuses and timely executed and returned a Claim Form and Release." (the "Settlement Class Members").

2.  **FACTUAL & PROCEDURAL BACKGROUND.**

   A.  **The Lawsuit and the Parties' Claims.**

   Ensign employed Prim and the Settlement Class Members as non-exempt hourly employees and paid them Operator Safety Bonuses and Mud Bonuses (the Contested Bonuses) in addition to their hourly pay. Prim alleged Ensign improperly excluded the Contested Bonuses from the calculation of his and the Settlement Class Members' overtime rates, and that the Contested Bonuses should have been included because the Contested Bonuses were non-discretionary. Ensign admitted the Settlement Class Members received the Contested Bonuses, and that Ensign did not include the Contested Bonuses in the Putative Class Members' regular rate in calculating overtime. However, Ensign argued the Contested Bonuses were discretionary and thus excludable from the regular rate, and that it paid the Settlement Class Members in full because other bonuses were properly accounted for. Ensign further argued it acted in good faith with respect to its payment practices and denied any violation of the FLSA was willful or that any class of similarly situated employees existed.

   B.  **The Settlement Agreement.**

   As preliminarily determined by the Court, the terms of the Agreement are reasonable, appropriate, and fair to all parties and individuals involved and will confer a substantial benefit upon the Settlement Class Members.

   i.  **Settlement Amount and Formula for Distribution.**

   The proposed settlement obligated Ensign to pay up to a maximum settlement amount of $815,000.00. ECF No. 49 at *13. If finally approved, all claims, including claims for attorneys' fees ($282,250.00, which is 35% of the Gross Settlement Amount), costs (not to exceed $3,500.00), settlement administration costs (not to exceed $15,000.00), and an enhancement

payment for Prim ($7,500.00) will be deducted from the Gross Settlement Amount to form the Net Settlement Amount ($503,750.00). *Id*. at *13-14, 23. The Net Settlement Amount will be divided among the Putative Class Members on a pro rata basis, and the portion of the Net Settlement attributed to workers who elected not to participate will be returned to Ensign. *Id.*

Because the settlement follows the opt-in structure of the FLSA, only the Settlement Class Members (who timely returned an executed Claim Form and Releases) are eligible to receive a settlement payment. 29 U.S.C. § 216(b). Each Settlement Class Member will receive their actual pro-rata share of the money they are allegedly owed based on corrected regular rate calculations incorporating the Contested Bonuses (calculated based on each individual's total compensation, bonuses received, and weeks worked during the class period), the amounts of which the Court preliminarily approved. *See* ECF No. 49 at *14, 23; ECF No. 51. Fifty percent of each settlement award will be treated as back wages subject to state and federal income tax withholding, while the other fifty percent will be designated as non-wage penalties/liquidated damages. ECF No. 49 at *14.

### ii. Scope of Releases.

If finally approved, Prim and the Settlement Class Members, in exchange for compensation under the settlement, will provide Ensign with a limited wage and hour release, which will release Ensign from all state and federal wage related claims asserted or that could have been asserted in this Lawsuit (the Released Claims). *See* ECF No. 49-1 at ¶ 9(r). In addition to the Released Claims and in exchange for release and other representations and warranties (including the payment of an enhancement award), Prim further agreed to provide Ensign with a general release of claims. *Id.* at ¶ 10(a). The Court preliminarily approved the same. ECF No. 51.

### C. Settlement Notice and Participation in the Settlement.

On November 5, 2019, in accordance with the Agreement (ECF No. 49-1) and the preliminary approval order (ECF No. 51), the Settlement Administrator distributed the Court-

approved Notice of Settlement and Settlement Consent Form (ECF No. 49-2) to the Putative Class Members. Declaration of Will Henry, CPT Administrator attached as Exhibit 2 at ¶7.[1] Pursuant to the Agreement, on December 5, 2019, the Settlement Administrator distributed an identical reminder notice by mail and email (if applicable) to those Putative Class Members who had not yet executed and returned the Court-approved Claim Form and Release. *Id.* The Putative Class Members had until January 4, 2020 to execute and return the Court-approved Claim Form and Release.

The results from the distribution of the Notice were overwhelmingly positive. In total, nearly half of the Putative Class Members (163 individuals or 49%) timely executed and returned the Court-approved Claim Form and Release to Prim's counsel or the Settlement Administrator. *Id.* at ¶ 10. These Settlement Class Members claimed 58% of the Net Settlement Amount allocated to the Putative Class Members ($290,337.72), and their average pro rata share amounts to $1,781.23. *Id.* at ¶ 11. This is a substantial benefit per Settlement Class Member.

A list of the individuals who participated in the settlement is attached as Exhibit D to Henry's Declaration.[2]

### 3.  THE COURT SHOULD GRANT FINAL COLLECTIVE CERTIFICATION OF THE PARTIES' PROPOSED SETTLEMENT CLASS.

The Court conditionally certified a Putative Class consisting of "all hourly oilfield employees who worked for defendant from January 18, 2014 through January 18, 2017 who received Operator Safety Bonuses and Mud Bonuses." ECF No. 51 at *3-6. Prim now seeks final collective certification of the Parties' proposed Settlement Class, which consists of "all hourly oilfield employees who worked for Ensign from January 18, 2014 through January 18, 2017 who

---

[1] A copy of the Court Approved Notice documents are attached as Exhibit A to the Declaration of Will Henry.

[2] Exhibits B and C to Henry's Declaration are those individuals with no mailing address (4) and the individuals with undeliverable notices (14)

4

received Operator Safety Bonuses and Mud Bonuses and who timely executed and returned a Claim Form and Release."

Prim alleges he and the Settlement Class Members were all non-exempt hourly employees of Ensign who all regularly worked more than 40 hours per week during the applicable time period. ECF No. 1 at *2, ¶ 7; ECF No. 49-3 at ¶¶ 2-3; 49-4 at ¶¶ 2-3. In addition to hourly compensation, Ensign paid Prim and all Settlement Class Members the Contested Bonuses (which Prim contends are non-discretionary because Ensign guaranteed and provided these bonuses, in part, to induce the Putative Class Members to work safely and efficiently and to encourage them to remain Ensign employees). ECF No. 49-3 at ¶¶ 4-11; ECF No. 49-4 at ¶¶ 4-11; *see*, *e.g*., ECF Nos. 49-6–49-8. Prim contends Ensign paid the Contested Bonuses to Prim and the Settlement Class Members regardless of any individualized factors. ECF No. 49-3 at ¶ 8; ECF No. 49-4 at ¶ 8.

Prim further contends he and the Settlement Class Members all received the Contested Bonuses, but that Ensign excluded them from its calculation of the Settlement Class Members' regular rate of pay in calculating overtime. ECF No. 49-3 at ¶¶ 9-11; ECF No. 49-4 at ¶¶ 9-11; ECF No. 49-5 at ¶¶ 3-5; *see*, *e.g*., ECF Nos. 46-6-46-7. Prim contends the Contested Bonuses should not have been excluded from their overtime calculations because the Contested bonuses were non-discretionary. ECF No. 49 at *3, 7. In this regard, Prim alleges Ensign informed him and the other Settlement Class Members when they were hired that they would receive Operator Safety Bonuses upon certain events (such as the completion of a project where no injuries or accidents occurred) and would receive Mud Bonuses based on the number of days they worked. *Id.* at *2-3.

Although Ensign disagrees the Contested Bonuses were non-discretionary (and thus excludable), Ensign asserted affirmative defenses applicable to all Settlement Class Members. *See*, *e.g*., ECF No. 11 at pp. 7-8. For example, Ensign stated it "properly accounts for non-discretionary bonuses in calculating the regular rates of pay," that it "did not willfully deprive Prim or any employee of any wages," and that no Putative Class Member is entitled to any recovery because

5

Ensign acted in good faith. *Id.* at p. 8.

These facts more than meet any standard for final collective action certification under 29 U.S.C. § 216(b). This is true even under the stricter, post-discovery standard (which evaluates the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations and whether plaintiffs made [any required filings] before instituting suit,") and under the Rule 23 class action standard (both the requirements (numerosity, commonality, typicality, and adequacy of representation) and the requirement that common questions of fact predominate).

4. **THE COURT SHOULD FINALLY APPROVE THE PARTIES' AGREEMENT.**

The Parties seek final Court approval of their Agreement (ECF No. 49-1). The Agreement represents a fair compromise of a *bona fide* dispute. The Agreement covers the claims of the Settlement Class Members who worked during the relevant period and provides them with a meaningful recovery of the compensation they are allegedly due. If finally approved, the Settlement Class Members will receive their pro rata share of the settlement. The Agreement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information over the course of multiple months. The terms of the Agreement are reasonable, appropriate, and fair to all parties and individuals involved.

    A. **Final Approval of the Agreement is Appropriate.**

The Agreement represents a fair compromise of a *bona fide* dispute concerning the legality of Ensign's compensation practices with respect to the Settlement Class Members. To approve the settlement agreement, the Court must find: (1) the litigation involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees. *See Lynn's Food Stores, Inc.* v. *United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

### i. A *Bona Fide* Dispute Existed.

The Court previously found a *bona fide* dispute exists. ECF No. 51 at *8. The Parties contested the claims and defenses asserted. Prim alleged the Settlement Class Members received the Contested Bonuses from Ensign and the bonuses were non-discretionary and should have been included in their overtime calculations. *See* 29 C.F.R. § 778.211(c); ECF No. 149-3 at ¶¶ 4-9; ECF No. 149-4 at ¶¶ 4-9; ECF No. 149-7; *see, e.g.*, ECF Nos. 149-6-149-8. On the other hand, Ensign argued the Contested Bonuses were discretionary and excludable from the Settlement Class Members' overtime rates. *See* 29 C.F.R. § 778.211(b); ECF No. 11 at ¶¶ 28-29; ECF No. 149-5 at ¶¶ 3-4. The Parties further disagreed on whether Prim could satisfy his burden to demonstrate that Ensign acted willfully, which in turn affects whether Prim could recover compensation for two years or three years. *See* 29 U.S.C. § 255.

Prim contends Ensign either knew the Contested Bonuses were non-discretionary or recklessly disregarded the potential such bonuses were non-discretionary in excluding them from the overtime calculations, in part because other lawsuits against oilfield companies involve regular rate violations for excluding similar bonuses. In contrast, Ensign maintained it "properly accounts for non-discretionary bonuses in calculating the regular rates of pay," the specific terms of the Contested Bonuses made them discretionary, and it "did not willfully deprive Prim or any employee of any wages," and at all times acted in good faith. ECF No. 11 at p. 8; ECF No. 49-5 at ¶¶ 4-6. Prim also contends Ensign would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. *See* 29 U.S.C. § 260. Ensign maintained it always acted in good faith, and damages (if any) should be unliquidated and be recovered only for a two-year period.

### ii. The Settlement is Fair and Reasonable.

The Court found the Parties' settlement to be fair and reasonable. ECF No. 51 at *10. All of the Parties (including their respective Counsel) agree. To be fair and reasonable, an FLSA

7

settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. *Id.* at *8. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See*, *e.g.*, *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins*, 568 F. Supp. 2d at 721 (evaluating collective action). The Tenth Circuit considers the following factors when deciding whether to approve a class-action settlement under FED. R. CIV. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

### a. The Parties Fairly and Honestly Negotiated the Agreement.

The Parties' settlement is the result of arm's-length negotiations by attorneys experienced in litigating federal and stage wage and hour disputes. ECF No. 49 at *22. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims and, in this case, were particularly well-informed as to the facts and circumstances of the litigation. *Id.* Further, Prim approves of the Agreement because he and the Settlement Class Members are receiving a substantial benefit. *Id.* After the Parties reached an agreement to settle, the Parties engaged in extensive negotiations concerning the specific terms of the Agreement, the notice program, and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations, and nothing about the settlement is the result of fraud or collusion.

### b. Serious Questions of Law and Fact Exist Placing the Ultimate Outcome in Doubt.

As discussed, serious questions of law and fact exist, which places the ultimate outcome

of this litigation in doubt absent the Parties' Agreement. Prim's Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Prim's Counsel certainly believes Prim's claims relating to regular rate violations are strong and can be proven at trial, a finding of liability is never assured, especially in complex, hyper-technical litigation. Even with a strong factual and legal case, the Settlement Class Members face significant risks in establishing liability and damages. Prim alleged hyper-technical regular rate violations of the FLSA. Although Prim's Counsel felt strongly the Contested Bonuses were non-discretionary and should have been included in the overtime calculations, the Court easily could have determined all, or part of, the Contested Bonuses were discretionary. *See* 29 C.F.R § 778.208; 29 C.F.R. § 778.211(b). Even assuming Prim proved Ensign's exclusion of the Contested Bonuses violated the FLSA, Prim may not have been able to prove Ensign's violation was willful, thus negating an entire year's worth of potential damages. Further risks existed including summary judgment on the merits and any appeal.

### c. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted Litigation.

Given the Parties' dispute over the facts and law, the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation. As the Court noted, the Net Settlement Amount reflects an adequate compromise in light of the disputed questions of law and fact in this case and the risks inherent in continued litigation. ECF No. 51 at *10. There is no question the value of the Agreement represents fair value for the Settlement Class Members. Numerous workers will receive compensation in lieu of back wages and penalty damages under federal law without the risk or expense of protracted litigation and trial. This is particularly significant under the circumstances presented herein considering the wavering oil and gas economy and the Parties' fundamental disagreements as to the merits of Prim's claims and the possibility the Settlement Class Members could receive no money at all. Each Settlement Class

Member will recover a specified amount calculated based upon his/her employment history with Ensign during the relevant period.

If approved, Ensign will pay up to a Gross Settlement Amount of $815,000.00. ECF No. 49 at *13. Of that amount, an estimated $285,200.00 will go toward attorney's fees, $3,500.00 will pay for out-of-pocket costs incurred by Prim's Counsel, $15,000.00 pay for settlement administration costs, and $7,500.00 will be paid to Prim as an enhancement award. *Id.* In preliminarily approving the Agreement, the Court found both the payment for such claims and the amounts thereof reasonable. ECF No. 51. The remaining sum ($503,750.00 – nearly 75% of Ensign's exposure for unliquidated back wages for the entire three-year statutory period utilized) constitutes the Net Settlement Amount which was allocated among the 336 Putative Class Members on a pro rata basis. ECF No. 49 at *14, 23.

As previously noted, the results from the distribution of the Notice were overwhelmingly positive. In total, nearly half of the Putative Class Members (163 individuals or 49%) timely executed and returned the Court-approved Claim Form and Release to Prim's counsel or the Settlement Administrator. Ex. 2 at ¶ 10. These Settlement Class Members claimed 58% of the Net Settlement Amount allocated to the Putative Class Members ($290,337.72) and their average pro rata share amounts to $1,781.23. *Id.* at ¶11. This is a substantial benefit per Settlement Class Member, the value of which outweighs the mere possibility of future relief following continued litigation.

### d. The Proposed Enhancement Award is Reasonable.

The Court found the proposed $7,500.00 enhancement award to Prim reasonable. ECF No. 51 at *10. When evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pliego v. Lose Arcos Mexican*

*Restaurants*, 313 F.R.D. 117, 131 (D. Colo. 2016. Courts in this District (including this Court) have found similar incentive awards reasonable in other FLSA/employment cases. *See*, *e.g.*, *id.*; *Aragon v. Clear Water Products, LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (Brimmer, J.).

Ensign does not oppose the award. Doc. 49-5 at ¶ 10. The enhancement award represents only 0.0092% of the Gross Settlement Amount (and 0.0149% of the Net Settlement Amount) and is intended to recognize Prim's initiative and efforts on behalf of the Settlement Class Members and the time and effort he contributed to this Lawsuit (and its settlement) and to compensate him for agreeing to a general release of claims. Prim took a substantial risk in bringing this case forward. Prim also expended significant effort and time, participating in all stages of the litigation to help ensure the Settlement Class Members recovered their unpaid wages. ECF No. 49 at *27. There is no question the Settlement Class Members stand to benefit from Prim's contribution. *See* ECF No. 51 at *11.

### iii. The Agreement Has a Reasonable Award of Attorneys' Fees and Costs.

An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *Ali v. Jerusalem Restaurant, Inc*., No. 14-cv-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In assessing the reasonableness of attorney fee awards in class actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are historically applied in performing a lodestar analysis.[3] In preliminarily approving the Parties'

---

[3] These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the

Agreement, the Court found the *Johnson* factors weighed in favor of approving Prim's requested attorney's fees ($285,250.00, or approximately 35% of the Gross Settlement Amount) and out-of-pocket costs ($3,500.00). ECF No. 51 at *18; ECF No. 49-1 at *7-8. Prim and Class Counsel also believe the Agreement's provision concerning attorney's fees and costs is fair and reasonable and, if approved, Ensign does not oppose the same. ECF No. 49-5.[4]

The Court found "the time and labor factor weighs in favor of the requested fee award." ECF No. 51 at *15. Prior to granting preliminary approval, Prim's Counsel and their staff spent over 240 hours working on this matter. ECF No. 49-9 at *5. Since then, Prim's Counsel estimates his firm and their staff have spent in excess of 25 hours in total aiding in the administration of the settlement, answering Putative Class Members' questions, and moving for final approval. Ex. 1 at Footnote 1. Counsel is experienced and skilled in handling FLSA matters like this. ECF No. 49 at *31. Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Two fundamental questions governed this case: (1) whether the Contested Bonuses were non-discretionary and thus includable in the Putative Class Members' overtime calculations; and (2) whether this question could be resolved on a collective action basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA. Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate. *Whittington*, 2013 WL 6022972 at *6.

---

amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc*., No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013).

[4] In further support of his request for final approval of his reasonable attorney's fees and costs, Prim specifically incorporates herein by reference the reasons he set forth in detail in his Motion for Preliminary Approval of the Parties' Proposed Settlement. ECF No. 49 at *27-38.

Further, as courts in this District have noted, attorneys handling large classes such as this (a case involving nearly 350 individuals) are precluded by the ticking of the clock from taking other cases given that counsel took a chance on a possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making the litigation relatively undesirable and risky. *See Aragon*, 2018 WL 6620724 at *6.[5] As the Court correctly noted, "the novelty of the questions presented and the skill required in litigating this case weighs in favor of approving the proposed fee award," as did the fact "class counsel represented plaintiff on a contingency fee basis[.]" ECF No. 51 at *15-16. And in preliminarily approving the requested attorney's fees, the Court found "the requested thirty-five-percent fee is within the customary range of attorney's fees." *Id.* at *16; *see*, *e.g.*, *Lucken Family Ltd. Partnership*, 2010 WL 5387559 at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007).

Perhaps most importantly, the Court noted "the amount involved and the results obtained" weighed in favor of approving the Parties' proposed fee arrangement. ECF No. 51 at *16. "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Prim's Counsel recovered $815,000.00 on behalf of approximately 340 Putative Class Members and secured an award that was 75% of the maximum potential recovery. After distributing the Court-approved settlement documents, nearly half of the Putative Class Members timely executed and returned the Court-approved Claim Form

---

[5] The Court could have determined all or part of the Contested Bonuses were discretionary and thus no regular rate violation occurred. *See* 29 C.F.R § 778.208; 29 C.F.R. § 778.211(b). Even assuming Prim proved Ensign's exclusion of the Contested Bonuses violated the FLSA, Prim may not have been able to prove Ensign's violation was willful (negating a year of damages). These facts made taking this case extremely risky.

and Release to obtain their pro rata share of the Net Settlement Amount. Ex. 2 at ¶ 10.  In doing so, the Settlement Class Members claimed approximately 58% of the Net Settlement Amount and the average pro rata share amounts to $1,781.23. *Id.* at ¶ 11. This is a substantial benefit per Settlement Class Member that, given the risks involved, "the relief provided by the settlement represents a favorable result for the settlement class." ECF No. 51 at *16.

Prim's request for a percentage fee award is further reasonable when cross-checked with the lodestar amount. Prim's Counsel seeks $121,860.00 for 263.5 total hours of work spent on the case. ECF No. 49-9 at *6, ¶ 17. This requested fee reflected a 2.34 multiplier of the lodestar amount, which is within the range of multipliers approved in other class or collective action cases. *See Miniscribe Corp. v. Harris Trust Co. of California*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming approval of 2.57 lodestar multiplier); *see also Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases from this district ranging from a 2.5 multiplier to a 4.6 multiplier). This amount goes up if the additional 25 hours of time post-preliminary approval is included.  Moreover, the hourly rates charged by Prim's Counsel[6] are generally consistent with the rates in this District. A*ragon*, 2018 WL 6620724 at *7; S*haw*, 2015 WL 1867861 at *8. "Even if the rate [$650] is slightly higher than the rates customarily charged in this area, the [2.34] multiplier is lower than the lodestar multipliers that have been approved in other class action cases in this District." *Aragon*, 2018 WL 6620724, at *7; *see also Mishkin*, 2012 WL 4069295, at *2.

### a. The Parties' Agreement Does Not Undermine the Purpose of the FLSA.

As the Court noted, the Parties' Agreement does not undermine the purposes of the FLSA. ECF No. 51 at *11-12. In addition to Prim, approximately 340 similarly situated workers received

---

[6] Specifically, Michael Josephson spent 80 hours (at $650/hour), Rex Burch spent 12.5 hours (at $650/hour), Lindsay Itkin spent 147 hours (at $400/hour), and experienced legal assistants spent 25 hours (at between $125 and $140/hour) litigating and bringing this case to resolution prior to preliminary approval. *Id.* at *5.

Contested Bonuses which were not included in their overtime calculations. And, "if such policy is not remedied, these circumstances could recur." *Id.* at *11. Further, Ensign had no known history of non-compliance with the FLSA. *Id.*

5. **CONCLUSION.**

For the reasons set forth in detail herein, the Court should finally certify the Parties' proposed Settlement Class as a collective action and finally approve the Parties' Agreement.

Respectfully Submitted,

By: */s/ Lindsay R. Itkin*
Michael A. Josephson
Texas State Bar No. 24014780
Lindsay R. Itkin
Texas State Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300

Richard J. (Rex) Burch
Texas State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713)877-8065

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

**CERTIFICATE OF CONFERENCE**

I hereby affirm that Counsel for Plaintiff conferred with Counsel for Defendant regarding the subject matter of this Motion and that Defendant is unopposed to the relief sought herein. Following the Parties' successful settlement negotiations and the Court's granting of preliminary approval, Counsel for Plaintiff and Counsel for Defendant exchanged drafts of this Motion and corresponding exhibits.

*/s/ Lindsay R. Itkin*
**Lindsay R. Itkin**

Case 1:15-cv-02156-PAB-KMT   Document 52   Filed 01/27/20   USDC Colorado   Page 16 of 16

## CERTIFICATE OF SERVICE

I served this document via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

/s/ Lindsay R. Itkin
**Lindsay R. Itkin**