IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 15-cv-02156-PAB-KMT

MATTHEW PRIM, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING INC.,

    Defendant.

## ORDER

This matter comes before the Court on Plaintiff's Unopposed Motion for Final Collective Action Certification of Settlement Class and Final Approval of the Parties' Settlement Agreement [Docket No. 52]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On September 30, 2015, plaintiff filed his complaint, individually and on behalf of all others similarly situated, alleging that defendant violated the Fair Labor Standards Act ("FLSA"). Docket No. 1. Plaintiff was employed by defendant and worked in an oilfield as an hourly employee. *Id.* at 2, ¶ 7. Plaintiff and other employees received bonuses as a component of their compensation. *Id.*, ¶ 8. Plaintiff alleged that defendant excluded these bonuses from calculations of plaintiff's and other employees' regular rate of pay and, therefore, failed to pay plaintiff and the putative class members overtime at the rate required by the FLSA. *Id.* at 2-3, ¶ 9.

On February 15, 2017, plaintiff filed a motion seeking approval of the settlement between the parties and dismissal of this lawsuit with prejudice. Docket No. 33. The Court denied the motion without prejudice, noting several issues that prevented the Court from being able to approve the parties' settlement. Docket No. 39. Plaintiff filed an amended motion and revised proposed settlement agreement on January 26, 2018. Docket Nos. 42, 42-1. The Court again denied plaintiff's motion without prejudice. Docket No. 43. The Court found that it was unable to approve the proposed settlement because plaintiff had not moved for conditional certification of the collective action. *Id.* at 3.

On February 19, 2019, the parties jointly moved for conditional certification of a collective action. Docket No. 49. The Court granted the motion on September 30, 2019, conditionally certifying a class of "all hourly oilfield employees who worked for defendant from January 18, 2014 until January 18, 2017 and who received Operator Safety Bonuses and Mud Bonuses during that time frame." Docket No. 51 at 6. The Court further approved plaintiff's proposed Notice of Collective Action. *Id.* at 13.

Following receipt of the court-authorized notice, 163 individuals joined the collective action as opt-in plaintiffs. Docket No. 52 at 1. On January 27, 2020, the parties jointly moved for a court order approving the settlement agreement and dismissing the matter with prejudice. *See id.*

## II. ANALYSIS

In a lawsuit brought by employees against their employer to recover back wages under the FLSA, any proposed settlement between the parties must be presented to

the court for a determination of whether the settlement is fair and reasonable.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  This requirement effectuates the "prime purpose" of the FLSA, which is to "aid the unprotected, unorganized and lowest paid of the nation's working population . . . who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).

### A.  Final Class Certification

The FLSA permits an employee or employees to bring an action "[on] behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Courts apply a two-stage approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  First, a court makes an initial determination as to whether plaintiffs are similarly situated for purposes of sending notice to putative class members.  *Id.* at 1102.  At the "notice" stage, a court applies a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).  After discovery, a court makes a second determination about whether putative class members are similarly situated.  *See id.* at 1102-03.  In deciding whether to certify a collective action at this stage, courts apply a stricter standard and consider several factors, including: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be

individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678). Final class certification is generally required before a court may approve a collective action settlement. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013) (quoting *Peterson v. Mortg. Sources, Corp.*, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011)).

Plaintiff contends that the requirements for final collective action certification are satisfied because (1) opt-in plaintiffs are all non-exempt hourly employees who worked more than 40 hours per week; (2) opt-in plaintiffs were paid the contested bonuses, but those bonuses were excluded from the calculation of overtime pay; (3) defendant offered the same affirmative defenses for all opt-in plaintiffs; and (4) proceeding as a collective action provides a fair and procedurally efficient resolution of opt-in plaintiffs' claims. Docket No. 52 at 4-6. The Court agrees that opt-in plaintiffs are similarly situated for purposes of final certification. Plaintiff alleged that the putative class members are all hourly employees with a similar pay structure. Docket No. 1 at 2-3, ¶¶ 7-8, 11. These allegations are supported by the common pay structure offered by the parties. *See* Docket No. 49-3 at 2-3; Docket No. 49-4 at 2-3; Docket No. 49-5 at 2-3. Further, Mr. Prim and James Pena submitted declarations stating that they had similar work schedules and frequently worked over 40 hours per week. *See* Docket No. 49-3 at 2, ¶ 3; Docket No. 49-4 at 2, ¶ 3. Given the similar pay structure of the opt-in plaintiffs, defendant's principal defense – that plaintiffs were exempt from overtime pay under the FLSA – applies equally to all members of the putative collective. Finally,

fairness and procedural considerations support final certification. Collective actions allow plaintiffs to pool their resources to litigate claims they might otherwise be unable to pursue. Moreover, the parties' settlement in this case will only affect the rights of those individuals who have affirmatively opted in to the lawsuit. *See Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171-72 (D. Colo. 2018) (citing plaintiffs' ability to pool their resources and the limited effect of the settlement as fairness and procedural considerations supporting final certification).

For the foregoing reasons, the Court will grant final collective action certification.

### B.  Notice

Although § 216(b) does not require that a court hold a fairness hearing before approving a collective action settlement, courts generally require, at a minimum, that opt-in plaintiffs be given notice of any settlement and an opportunity to object. *Tommey v. Comput. Scis. Corp.*, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015); *see also Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253, *10 (S.D. Ala. Dec. 13, 2013) ("[T]he majority of the courts approve a [FLSA collective action] settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object."). The Court approved plaintiff's notice in a prior order and finds no deficiencies now. *See* Docket No. 51 at 12-13.

### C.  Settlement

Before approving an FLSA settlement, a court must find that: (1) the agreement

is the result of a bona fide dispute; (2) the proposed settlement is fair and reasonable to all parties involved; and (3) the proposed settlement contains a reasonable award of attorneys' fees and costs. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Gassel v. Am. Pizza Partners, L.P.*, No. 14-cv-00291-PAB-NYW, 2015 WL 5244917, at *3 (D. Colo. Sept. 8, 2015).

### 1. Bona Fide Dispute

Parties seeking approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). To meet this obligation, the parties must describe: (1) the nature of the dispute; (2) the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justifications for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* The mere existence of an adversarial lawsuit does not satisfy these requirements. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008).

Plaintiff alleges that defendant improperly failed to account for certain bonuses when calculating employee overtime compensation. Docket No. 1 at 2-3, ¶¶ 8-9. Defendant denies these allegations and asserts that the bonuses were discretionary and, as a result, were properly excluded from overtime compensation rates. Docket No. 49 at 19-20. As the Court previously concluded, given the respective positions of

the parties, the Court finds that a bona fide dispute exists.  *See* Docket No. 51 at 7-9.

### *2. Fair and Reasonable*

To be fair and reasonable, a FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA's policy rationales. *Dees*, 706 F. Supp. 2d at 1241.  Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement.  *See, e.g.*, *Dail v. George A. Arab Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (evaluating fairness of settlement in individual action); *Collins*, 568 F. Supp. 2d at 721-22 (evaluating settlement in collective action).  The Tenth Circuit considers the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Under the terms of the settlement agreement, defendant agrees to pay up to $815,000, which consists of (1) $285,200 in attorney's fees; (2) up to $3,500 in costs for plaintiff's counsel; (3) $15,000 in settlement administration costs; and (4) a $7,500 enhancement award for Mr. Prim.  Docket No. 49-1 at 7-8.  The remaining sum, $503,750, is the amount that will be paid to class members on a pro rata basis.  Docket No. 52 at 10.  A class member's pro rata share is determined by the hours that member

worked during the class period and bonuses received. Docket No. 49-1 at 8, ¶ 17. The average pro rata share of an opt-in plaintiff is $1,781.23; the largest amount to be received by an opt-in plaintiff is $8,514.03. Docket No. 52-2 at 4, ¶ 11. Plaintiff approves the settlement because he is receiving a "substantial benefit" and states that the settlement is the result of arm's-length negotiations. Docket No. 49 at 22. Based on this information, and upon consideration of the relevant factors, the Court finds the parties' settlement to be fair and reasonable. *See* Docket No. 51 at 10.

The settlement also provides for a $7,500 service payment to the named plaintiff, Mr. Prim. The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Aug. 22, 2015). Plaintiff has expended significant time in the litigation, took a risk in bringing the lawsuit due the perceived risk of retaliation, and the class members will benefit from plaintiff's efforts, receiving 75% of the maximum amount recoverable. Docket No. 51 at 10-11. Accordingly, the Court finds that the $7,500 award is reasonable. *See id.*

The Court must next determine whether the settlement agreement is consistent with the purpose of the FLSA. To determine whether a settlement complies with the FLSA, courts consider: (1) the presence of other similarly situated employees; (2) the likelihood that plaintiffs' circumstances will recur; and (3) whether defendants have a history of non-compliance with the FLSA. *Dees,* 706 F. Supp. 2d at 1244. Also

relevant is whether the proposed settlement contains a confidentiality provision. "It is well-settled that . . . a confidentiality provision in an FLSA settlement agreement 'contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.'" *Hoffman v. Poulsen Pizza LLC, et al.*, 2016 WL 2848919, at *3 (D. Kan. May 16, 2016) (quoting *Barbosa v. Nat'l Beef Packing Co., LLC*, 2014 WL 5099423, at *8 (D. Kan. Oct. 10, 2014); *see also Gamble v. Air Serv. Corp.*, 247 F. Supp. 3d 1302, 1306 (N.D. Ga. 2017) (noting that confidentiality provisions in FLSA settlements not only "frustrate the spirit and intent of the statute," but also "arguably violate provisions of the FLSA itself").  As there is no evidence in the record that defendant's non-compliance with the FLSA constitutes a continuing violation, and the settlement agreement does not contain a confidentiality provision, the parties' settlement does not undermine the purposes of the FLSA.

### 3. Attorney's Fees and Costs

The Court previously found that the proposed $285,250 in attorney's fees, or 35% of the gross settlement amount, was reasonable.  Docket No. 51 at 14-15.  In doing so, the Court determined that counsel had spent over 240 hours on the case, had conducted both informal and formal discovery, and had experienced counsel handling the case.  *Id.*  Additionally, the Court found that the 35% fee was within the customary range for attorney's fees and that the 2.34 multiplier of the lodestar amount was within the range of approved multipliers.  *Id.* at 17.  Since the Court's order on the proposed settlement, counsel has spent another 25 hours assisting in administering the proposed settlement, *see* Docket No. 52-1 at 6 n.1, which is several hours more than counsel had

predicted he would spend when he filed the motion for preliminary approval. Docket No. 51 at 15. Given substantial amount of time and labor invested in the case, the experience of counsel and novelty of the issues, and the $285,250 in attorney's fees being within the customary range for both percentage and lodestar multiplier, the Court finds that the requested $285,250 in attorney's fees is reasonable and should be approved. *Id.* at 14-18.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Unopposed Motion for Final Collective Action Certification of Settlement Class and Final Approval of the Parties' Settlement Agreement [Docket No. 52] is **GRANTED**. It is further

**ORDERED** that the request for final collective action certification for a collective of

> all hourly oilfield employees who worked for Ensign from January 18, 2014 through January 18, 2017 who received Operator Safety Bonuses and Mud Bonuses and who timely executed and returned a Claim Form and release.

is **GRANTED**. It is further

**ORDERED** that the parties' settlement agreement, Docket No. 49-1, is **APPROVED**. It is further

**ORDERED** that this case is dismissed without prejudice. Within fifteen days of this order, the parties shall notify the Court whether the settlement has been funded pursuant to the terms of the settlement agreement. Once the settlement is funded, the

Court will enter an order dismissing the case with prejudice.  It is further

**ORDERED** that the Court retains jurisdiction over this case for the limited purpose of enforcing the parties' settlement agreement until the settlement is funded and the case is dismissed with prejudice.

DATED August 6, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge